**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| MICHAEL ROWAN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| SUNFLOWER ELECTRIC POWER, | ) | Case No. 2:15-cv-9227-JWL-TJJ |
| CORPORATION, SUNFLOWER ELECTRIC | ) | |
| HOLDINGS, INC., MID-KANSAS ELECTRIC | ) | |
| COMPANY, LLC, POWER TESTING AND | ) | |
| ENERGIZATION, INC., AND | ) | |
| POWER CONSTRUCTORS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT POWER CONSTRUCTORS, INC.'S COMBINED MOTION TO
COMPEL AND MEMORANDUM IN SUPPORT**

Defendant Power Constructors, Inc. ("Power"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 37(a) and D. Kan. Rules 7.1, 37.1, and 37.2, hereby moves the Court to compel Plaintiff to produce documents and fully respond to Power's First Sets of Interrogatories and Requests for Production. In support, Power states:

**CERTIFICATE OF CONFERRAL**

1.      In accordance with Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, counsel for Power and Plaintiff have conferred in an attempt to resolve outstanding discovery disputes. Specifically, counsel for the parties met in person on February 1, 2016, for approximately four hours to address outstanding discovery disputes of both parties. The parties subsequently held an hour-long teleconference on February 18, 2016, to address the remainder of Power's disputes regarding Plaintiff's responses to its discovery. In addition, the parties exchanged multiple e-mail communications addressing discovery disputes. To date, however, the parties have been unable to resolve all outstanding disputes regarding Plaintiff's responses to Power's discovery.

## BACKGROUND AND PROCEDURAL POSTURE

2.      On November 18, 2015, Power propounded its First Sets of Interrogatories and Requests for Production on Plaintiff. (Attached as Exhibits A and B, respectively.) Plaintiff responded to Power's document requests on December 21, 2015, and to Power's interrogatories on January 18, 2016. (Attached as Exhibits C and D, respectively.)

3.      During a January 21, 2016, telephonic discovery status conference, the Court directed the parties to "resolve most if not all of their [discovery] disputes" during meet and confer sessions and follow-up discussions to be held before a second, February 22, 2016, discovery status conference, at which time the Court would take up any remaining disputes among the parties. *See* Jan. 22, 2016, Order (Doc. 92).

4.      On January 29, 2016, Power sent a golden rule letter to Plaintiff's counsel addressing deficiencies in Plaintiff's responses. (Attached as Exhibit E.) On February 1, 2016, following a four-hour in-person meet and confer regarding disputes over Power's responses to Plaintiff's document requests, the parties addressed in part Power's golden rule letter. For the majority of issues, however, Plaintiff's counsel declined to confer, and requested that a separate meet and confer on Power's discovery requests be held at a later date. Plaintiff's counsel proposed a telephonic conference on February 18, 2016, which, per Plaintiff's counsel, was the first date available after February 1 for Plaintiff's counsel to meet and confer.

5.      On February 12, 2016, Plaintiff served his supplemental responses to Power's First Requests for Production of Documents, which failed to satisfactorily address the issues outlined in Power's golden rule letter. (Attached as Exhibit F.) Plaintiff did not, and to date has not, served supplemental answers to Power's First Set of Interrogatories.

6.      On February 18, 2016, counsel for Power and Plaintiff conducted an hour-long teleconference on Power's document requests and interrogatories. At the conclusion of that conference, numerous issues remained unresolved.

7.      In light of the Court's order on January 22, 2016, Power submitted to the Court on February 19, 2016, a letter brief outlining the outstanding discovery disputes regarding Plaintiff's responses to Power's interrogatories and document requests, which Power intended to take up during the February 22, 2016, discovery status conference. (Attached as Exhibit G.)

8.      After Power submitted its letter brief, Plaintiff's counsel sent a letter to Power counsel the evening of February 19, 2016, summarizing Plaintiff's responses on the handful of issues, out of many, that Plaintiff had agreed to reassess during the meet and confer on February 18, 2016, ultimately agreeing to respond only to a single interrogatory, and standing on his objections to the remainder. (Attached as Exhibit H.)

9.      Because of the number of issues raised at the February 22, 2016, hearing, the Court was unable to address Power's contentions set out in its letter brief regarding Plaintiff's responses to its discovery requests. The Court granted Power leave to file the instant motion.

## SUMMARY OF DISCOVERY DISPUTES

10.     Plaintiff alleges that he was injured on August 29, 2013, when he received an electric shock while working near an energized 138kV transmission line near Medicine Lodge, Kansas. In his First Amended Complaint, Plaintiff alleged that the electric shock aggravated preexisting conditions from which he suffered. *See, e.g.*, First Am. Complt. ¶ 13 (Doc. 29). Plaintiff further alleged past and future pain and suffering, neurological and other internal injuries, past and future lost earnings, past and future mental distress, past and future medical expenses, past and future expenses for care and treatment. *See, e.g.*, *id*. at ¶ 38.

11.     At the time of his injury, Plaintiff was part of a five-man crew from Track Utilities, LLC ("Track") attempting to erect a guard structure under the aforementioned energized 138kV transmission line. The Track superintendent in charge of the crew, Darryl Kimmel, was not present, having left earlier in the day to return home in advance of the upcoming Labor Day weekend.

12.     At the time of his injury, Plaintiff was operating too close to the overhead transmission line, in direct violation of Power and Sunflower safety manuals—which governed Track's and Plaintiff's conduct by contract—as well as in violation of OSHA's regulations regarding safe clearance distances for working near energized power lines. Notably, both Power and Sunflower require greater clearance than OSHA. The Track crew, including Plaintiff, violated those safe clearance requirements of OSHA, Power and Sunflower, and violated the basic safety training that every worker on such a crew receives or should have received.

13.     Further, on the morning of August 29, 2013, the Track superintendent, Kimmel, told Power's construction manager, James Stovall, that the Track crew's "plan for the day was to scatter poles, press and frame." Kimmel did not tell Stovall the crew would be erecting guard structures. Kimmel also did not tell Stovall that he would be leaving the job site and not supervising the crew's work. Earlier in the week, Stovall had explicitly instructed Kimmel that the Track crew was not to erect guard structures until the transmission line was de-energized. The de-energization was scheduled for early October 2013.

14.     Accordingly, Power seeks to discover documents and information regarding Plaintiff's injuries and damages, including his current physical and mental conditions post-injury.

15.     Power seeks to discover documents and information regarding Plaintiff's post-injury capacity to work, including the type of work he is able to perform, as well as the type of

work he has told his employers he is able to perform. This information includes not only his earning capacity, but the specific work itself that Plaintiff can perform and/or has claimed he can perform.

16.     Power seeks to discover documents and information regarding Plaintiff's compliance with safety policies, procedures, and regulations.

17.     Power seeks to discover documents and information regarding Plaintiff's conduct during the immediate time period leading up to and including the time of the accident.

18.     Finally, Power seeks to discover documents and information regarding the reasonable value of medical services provided him following the accident.

19.     These documents and information are unquestionably relevant to the claims and defenses at issue in this case—in particular, Plaintiff's alleged damages, and Plaintiff's fault.

20.     Plaintiff has refused to provide the requested information on the grounds that it is overbroad, irrelevant, and subject to expert testimony, among other objections.

21.     Plaintiff cannot meet its burden that the requested documents and information are improper, irrelevant, or prejudicial. Therefore, Plaintiff should be compelled to produce the requested documents, and fully answer Power's interrogatories, as provided below.

## ARGUMENTS AND AUTHORITIES

The scope of discovery allowed by the Federal Rules of Civil Procedure is broad, it "is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1992). Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties

> may obtain discovery regarding any nonprivileged matter that is relevant to any
> party's claim or defense and proportional to the needs of the case, considering the
> importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Relevancy is broadly construed, and a request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.'" *Chen v. Dillard Store Servs., Inc.*, No. 13–cv–2358–CM–TJJ, 2015 WL 1530555, at *5 (D. Kan. Apr. 6, 2015) (citation omitted).

The party objecting to discovery has the burden to demonstrate the discovery is not proper. *McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 671 (D. Kan. 2015). That is, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* (citations omitted). Further, the party opposing discover also bears the burden "of establishing whether the Rule 26(b)(2)(C)(iii) proportionality or good faith requirements have been met." *Id.* (citation omitted).

Plaintiff has not satisfied his burdens and should be compelled to provide responsive documents and information.

## I.    Plaintiff Must Answer Power's Interrogatories Regarding Plaintiff's Alleged Preexisting Conditions Aggravated by the August 29, 2013, Accident.

Power's **Interrogatory No. 11** requested that Plaintiff "describe all injuries, ailments or pains [Plaintiff] claims to have suffered as a result of the alleged occurrence, stating the part of [Plaintiff's] body so affected, the severity of such injuries, ailments or pains, and how long each lasted." Power's **Interrogatory No. 12** requested that Plaintiff "state each date on which [Plaintiff was] examined or treated by any doctor, physician, hospital, clinic, or medical practitioner with respect to any injury, illness or disability which you claim to have sustained or suffered as a result

of the alleged occurrence," and provide the treater's name and address, the nature and extent of the treatment received, the diagnosis and prognosis made, and the amount charged.

In Plaintiff's First Amended Complaint, Plaintiff alleged that the injuries he sustained as a result of the August 29, 2013, accident aggravated preexisting conditions. *See, e.g.*, First Am. Complt. ¶ 13 (Doc. 29) ("The electric current discharged into Mr. Rowan also aggravated preexisting conditions."). Plaintiff made this allegation four times in his Complaint. *Id*. at ¶¶ 13, 38, 45, 53.

In his January 18, 2016, response to Power Interrogatory Nos. 11 and 12, Plaintiff did not identify the allegedly aggravated preexisting condition(s), nor did he identify dates of treatment for same. In its January 29, 2016, golden rule letter, Power asked Plaintiff to provide this information, which, based on Plaintiff's allegations, is relevant to Plaintiff's claims for damages, if not also applicable to his capabilities to perform the work for which Plaintiff was hired by Track. Plaintiff did not supplement his responses to Power's Interrogatories. During the parties' February 18, 2016, meet and confer, Plaintiff's counsel for the first time objected that the information was "subject to expert testimony." This objection was not made in Plaintiff's written answers, and was therefore waived. Fed. R. Civ. P. 33(b)(4). Moreover, it is inapplicable. Plaintiff's alleged preexisting condition, which he placed at issue in his Complaint, is a factual issue, the answer to which Power is entitled in order to investigate Plaintiff's claims, and cross-examine him about at his deposition. Until such time as Plaintiff provides sworn testimony—in response to the pending interrogatory—there is simply no issue for expert analysis.

Plaintiff's counsel further contended by way of response that Plaintiff had produced his medical records and that Power therefore had the same information Plaintiff's counsel had. Plaintiff's counsel further instructed Power to "look at the damn records." Again, whether or not

Plaintiff has produced all of his medical records is irrelevant to the interrogatories posed to Plaintiff. It is a fundamental and basic requirement that a person claiming damages as a result of personal injury must describe the claims made. Even if Plaintiff's counsel had specifically identified the records relevant to Plaintiff's preexisting conditions, which it did not, such a response would still be deficient. Plaintiff is not a business; his medical records are not business records under Rule 33(d). By rule, Plaintiff must answer these questions and until he does so under oath, his answers are wholly deficient.

Accordingly, Power moves the Court to compel Plaintiff in response to **Interrogatory Nos. 11 and 12** to identify his preexisting conditions he alleges were aggravated by the events of August 29, 2013, and to provide the requested information regarding his treatment for same.

## II.   Plaintiff Must Answer Power's Interrogatory Regarding Plaintiff's Alleged Disabilities.

Power's **Interrogatory No. 14** requested that Plaintiff state the inclusive dates Plaintiff claims as a result of the accident he was totally disabled from normal activities and partially disabled from normal activities. In his answer, Plaintiff objected that the interrogatory was duplicative of the previous Interrogatory No. 13(c), which asked Plaintiff to provide dates during which he was wholly incapacitated from normal activities and give complete details as to each activity from which he was so incapacitated. Plaintiff further objected that the terms total and partial disability in Interrogatory No. 14 were not defined and therefore overbroad.

At the parties' meet and confer, Power counsel narrowed the scope of these two Interrogatories to request, in response to No. 13(c), a "day in the life" narrative describing Plaintiff's physical maladies, and in response to No. 14, that Plaintiff provide the dates he was totally or partially disabled as those terms are defined under the Kansas worker's compensation

statute, Kan. Stat. Ann. § 44-510c–510e. In Plaintiff's February 19, 2016, letter to Power, Plaintiff agreed to supplement his answer to Interrogatory No. 13(c). Plaintiff declined to answer No. 14.

The information requested in Interrogatory No. 14 is relevant to determine the extent of Plaintiff's alleged damages. The information regarding disability is further relevant to assessing the "reasonable value of the medical services provided to plaintiff," per *Martinez v. Milburn Enterprises, Inc.*, 233 P.3d 205, 229 (Kan. 2010), which is discussed in more detail below.

Accordingly, Power moves the Court to compel Plaintiff to respond to **Interrogatory No. 14** to provide the requested information as set forth herein.

### III.   Plaintiff Must Answer Power's Interrogatories 16 Through 19.

In its First Set of Interrogatories, Power propounded 19 discrete interrogatories on Plaintiff. In his answers, Plaintiff declined to respond to **Interrogatory Nos. 16 through 19** on the ground that they exceeded the 25 interrogatory limitation imposed by the Court and Rule 33(a)(1). Per the parties' meet and confer, Plaintiff grounds his objection on the fact that Power's Interrogatory Nos. 12 through 15 contain sub-elements.

As noted above, Interrogatory No. 12 requested information regarding Plaintiff's medical providers. Power used four sub-elements to describe the specific information requested for each. Likewise noted above, Interrogatory Nos. 13 and 14 requested information regarding the effects on Plaintiff's life of the injuries allegedly sustained, using three and two sub-elements, respectively, to describe the information sought. Interrogatory No. 15 requested information regarding Plaintiff's loss of earning capacity, using five sub-elements to describe the information requested. For reference, Interrogatory Nos. 12 through 15 stated:

> INTERROGATORY NO. 12:  Please state each date on which you were examined or treated by any doctor, physician, hospital, clinic, or medical practitioner with respect to any injury, illness or disability which you claim to have sustained or

suffered as a result of the alleged occurrence, setting forth in detail as to each such date of examination or treatment:

a.    The name and address of each such doctor, physician, or medical practitioner;

b.    The nature and extent of the examination or treatment received from each such doctor; physician, or medical practitioner;

c.    The diagnosis and prognosis made by each such doctor, physician or medical practitioner;

d.    The amount charged you, or any other person or organization for your account, by each doctor, physician, or medical practitioner, fully itemized as indicated in any bill rendered therefor.

INTERROGATORY NO. 13:  As a result of the alleged occurrence, how long and between what dates were you:

a.    Wholly confined to bed,

b.    Wholly confined to the house,

c.    Wholly incapacitated from your normal activities giving complete details as to each activity from which you were so incapacitated.

INTERROGATORY NO. 14:  Please state the inclusive dates you claim you were, as a result of the alleged occurrence:

a.    Totally disabled from your normal activities;

b.    Partially disabled from your normal activities.

INTERROGATORY NO. 15:  If you are claiming any loss of earning capacity as a result of the alleged occurrence, please state:

a.     the inclusive dates between which you were unable to work as a result of the alleged occurrence;

b.    the total amount of earnings which you lost as a result of your absence;

c.    the nature of your employment immediately prior to the alleged occurrence, indicating your job title, classification or position;

d.    the name and address of your employer or your place of business;

e.    your earnings per week, month or year.

10

The District of Kansas applies the "common theme" standard when determining whether subparts to an interrogatory should count as separate interrogatories. *Pouncil v. Branch Law Firm*, 277 F.R.D 642, 646 (D. Kan. 2011). Specifically, "an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question." *Id*. (quoting 8B Wright & Miller, *Fed. Prac. & Proc*. § 2168.1 (3d ed. 2010) at 39–40). *See also id*. (providing the example that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication") (quoting Fed. R. Civ. P. 33(a) advisory committee's note (1993 Am.)).

Interrogatory Nos. 12 through 15 each address a single theme: medical treatment, incapacitation, disability, and loss of earnings, respectively. Therefore each should be treated as a single interrogatory. As a result, Power has not exceeded the 25 interrogatory limit imposed by the Court and Rule 33. Plaintiff should be compelled to answer the remaining **Interrogatory Nos. 16 through 19**. In the alternative, Power requests the Court grant it leave to serve supplemental interrogatories on Plaintiff in the form of Interrogatory Nos. 16 through 19.

## IV.    Plaintiff Must Produce All Documents for His Current Employer.

Power's **Request for Production No. 15** sought "all documents evidencing or relating to [Plaintiff's] employment with any employer within the past five (5) years, including but not limited to [Plaintiff's] employment with [Track], including, contracts, employee handbooks, training materials, pay stubs, paychecks, W-2's, or other similar materials related to [Plaintiff's] employment."

In his initial responses dated December 21, 2015, Plaintiff produced no documents, indicating that discovery was ongoing. On February 12, 2106, Plaintiff supplemented his responses, but with respect to his current employer stated, "Plaintiff has not produced any

documents from his current employer other than wage information from the date of the incident to current," and objected that any other information from his current employer was irrelevant to any claim or defense in the case. Plaintiff's refusal to properly respond to such a routine discovery request suggests that the employment application and other information completed by Plaintiff for that employer are inconsistent with the allegations made in this case.

In his Complaint, Plaintiff has alleged damages including past and future lost earnings. *See, e.g.*, First Am. Complt. ¶ 38 (Doc. 29). As a result, Power is entitled to discover information about Plaintiff's current employment in order to assess his earning capacity after the accident relative to that before. For example, Power is entitled to discover Plaintiff's employment application to his current employer, documentation regarding his current job description, and materials for any specific project on which he has been assigned to work, etc. Plaintiff has no legitimate basis to withhold the requested documents for his current employer.

Accordingly, Power moves the Court to compel Plaintiff to produce all documents in his possession responsive to **Request for Production No. 15**.

## V.     Plaintiff Must Produce His Commercial Driver's Licenses Without Redactions.

Power's **Request for Production No. 24** sought "[a] photocopy of the Plaintiff's driver's license for any state in which he has been licensed in the past five (5) years." In response, Plaintiff produced his commercial driver's licenses for Idaho and Washington, but redacted his driver's license number. In his written responses, Plaintiff objected to the production of his driver's license number on the ground that it was irrelevant to any party's claims or defenses. At the parties' February 18, 2016, meet and confer, Plaintiff's counsel reaffirmed Plaintiff' objection.

Plaintiff's position is untenable. Both of the produced licenses are commercial driver's licenses. At the heart of this case are questions of safety and compliance with regulations—both safety protocols and procedures imposed by private employers, and regulations imposed by

OSHA. Power is entitled to discover Plaintiff's driving record—and needs his license number to do so. Plaintiff's driving record bears directly on Plaintiff's compliance with rules and regulations while driving company vehicles, including but not limited to his use of company vehicles to commute between work sites, and use of company vehicles, like the lift vehicle used during the erection of the guard structure when the accident occurred, at those job sites.

Plaintiff's driver's license number further has relevance in verifying medical records requested and received for Plaintiff and in ascertaining the accuracy of information regarding employment. Accordingly, Power moves the Court to compel Plaintiff to produce legible, unredacted copies of Plaintiff's driver's licenses in response to **Request for Production No. 24**.

## VI.   Plaintiff Must Produce His Cell Phone Logs for the Seven Days up to and Including the Date of the Accident, August 29, 2013.

Power's **Request for Production No. 27** sought "[a] copy of all cell phone records, text messages, emails, invoices or other documents which would evidence telephone calls or communications made or received by the Plaintiff during the seven days preceding and up to and including the date of the events referred to in [Plaintiff's] First Amended Complaint." Plaintiff objected on the grounds that the request was overbroad, unduly burdensome, and not limited in time or scope.

First, Plaintiff's objections regarding time and scope are unfounded. The request is specifically limited to a seven-day period. Moreover, at the parties' February 18, 2016, meet and confer, Power counsel narrowed the request to Plaintiff's cell phone logs (e.g., billing statements from Plaintiff's cell phone provider identifying date, time, and duration of calls and date, time, and data size of text messages). This information is necessarily relevant to Plaintiff's behavior on and around the specific time of the accident, his focus on the work being performed, and his communications with others regarding the project.

Accordingly, Power moves the Court to compel Plaintiff to produce all documents in his possession responsive to **Request for Production No. 27**.

**VII.    Plaintiff Must Produce Documents Concerning Payments Received for Injuries Alleged in His Complaint.**

Power's **Request for Production No. 30** sought "all documents concerning any money, payments or reimbursements received by [Plaintiff] from any party related to any of damages, missed work, or medical treatments received as a result of the events described in [Plaintiff's] First Amended Complaint." Plaintiff objected to producing this information on grounds that it is irrelevant and further inadmissible under Fed. R. Evid. 403.

Plaintiff's position is contrary to the law. Under *Martinez v. Milburn Enterprises, Inc.*, 233 P.3d 205, 229 (Kan. 2010), a defendant is entitled to present evidence to the jury of the "reasonable value of the medical services provided to plaintiff." As the Kansas Supreme Court in *Martinez* held,

> When medical treatment expenses are paid from a collateral source at a discounted rate, determining the reasonable value of the medical services becomes an issue for the finder of fact. Stated more completely, when a finder of fact is determining the reasonable value of medical services, the collateral source rule bars admission of evidence stating that the expenses were paid by a collateral source. However, the rule does not address, much less bar, the admission of evidence indicating that something less than the charged amount has satisfied, or will satisfy, the amount billed

*Id.* at 222–23. Accordingly, any documents that lead to discovery of that information are necessarily discoverable. In addition, under Kan. Stat. Ann. § 44-504, a worker's compensation lien has attached to this suit. Power is entitled to discover this information for that reason as well and Plaintiff's position is without merit.

Accordingly, Power moves the Court to compel Plaintiff to produce all documents in his possession responsive to **Request for Production No. 30**.

## CONCLUSION

For these reasons, Power respectfully requests the Court grant this Motion to Compel and require Plaintiff to fully answer Interrogatory Nos. 11, 12, 14, 16, 17, 18, and 19, and produce responsive documents to Requests for Production Nos. 15, 24, 27, and 30, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

MCDOWELL, RICE, SMITH & BUCHANAN

By:     /s/ Thomas R. Buchanan
        Thomas R. Buchanan #10572
        Jason L. Buchanan #20815
        Rodney K. Miller, *pro hac vice*
        605 W. 47th Street, Suite 305
        Kansas City, Missouri 64112
        816-753-5400
        Facsimile: 816-753-9996
        tbuchanan@mcdowellrice.com
        jb@mcdowellrice.com
        rmiller@mcdowellrice.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 25th day of February, 2016, the foregoing was electronically filed with the United States District Court and served on the following:

Ken M. Peterson
Katherine J. Collins
Nanette Turner Kalcik
MORRIS, LAING, EVANS, BROCK AND KENNEDY, CHTD.
300 N. Mead, Ste. 200
Wichita, KS 67202-2745
316-262-2671
kpeterson@morrislaing.com
kcollins@morrislaing.com
nkalcik@morrrislaing.com

**ATTORNEYS FOR PLAINTIFFS**

Gregory A. Lee
Kelly J. Trussell
COOPER & LEE, LLC
100 SE 9th St.
P.O. Box 1755
Topeka, KS 66601-1755
greg@jkcopperlaw.com

Mark D. Calcara,
WATKINS CALCARA, CHTD.
1321 Main – Suite 300
P.O. Drawer 1110
Great Bend, Kansas 67530
(620) 792-8231
mcalcara@sunflower.net

**ATTORNEYS FOR DEFENDANTS**
**SUNFLOWER ELECTRIC POWER**
**CORPORATION, SUNFLOWER ELECTRIC**
**HOLDINGS, INC. AND MID-KANSAS**
**ELECTRIC COMPANY, LLC**

      */s/ Thomas R. Buchanan*
Thomas R. Buchanan, #10572