IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL ROWAN, )
 )
      Plaintiff, )
 )
v. )  Case No. 2:15-cv-9227-JWL-TJJ
 )
SUNFLOWER ELECTRIC POWER, )
CORPORATION, MID-KANSAS ELECTRIC )
COMPANY, LLC, AND POWER )
CONSTRUCTORS, INC. )
 )
      Defendants. )

### DEFENDANT POWER CONSTRUCTORS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

COMES NOW Defendant Power Constructors, Inc. ("Power"), by and through counsel, and responds and objects to Plaintiff's Second Set of Request for Production of Documents and Electronically Stored Information, as follows:

### RESPONSES AND OBJECTIONS

1. Native format including all metadata of deposition Exhibit 501 bearing bates PCIRS_08195 to and including PCIRS_08197.

**RESPONSE:**

Power will produce the native version of this document, including all available metadata.

2. All signed copies by Track Utilities, LLC and its representatives of the document attached hereto as Exhibit A.

**RESPONSE:**

Power responds that, based on its searches to date, it has not located any documents responsive to this Request. Investigation continues. Power will supplement its production in response to this Request should any responsive documents be found.

1


PLAINTIFF'S EXHIBIT A

3. All written job briefings provided by Power to crew members at the start of each day or at the start of a new task.

**RESPONSE:**

Power objects to this Request to the extent the term "Power" is intended to include Power Testing and Energization, Inc., which entity has been dismissed as a defendant from this case. Power further objects to this Request on the ground that it is not limited in time or to the subject Project, as the latter term is defined in Plaintiff's Requests, nor does it define the "crew members" to which it refers. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Power has limited its search to its documents for the Project pertaining to Track Utilities, LLC ("Track") crew members, and responds that it has no documents responsive to this Request.

By way of further response, Power states that pursuant to its contract with Track for the Project, Power did not direct Track's means or methods in the performance of its work. Accordingly, Power would not have prepared or provided job briefings (better known as Job Hazard Analyses) to Track. Rather, such work was delegated exclusively to Track pursuant to contract. For reference, Power refers Plaintiff to the contract for the Project (previously produced at Bates No. PCIRS_03930 – 3957), section 2.12.1 of which provides that, "Subcontractor assumes responsibility for implementing and monitoring all safety precautions and programs related to the performance of the Work." Power further refers Plaintiff to Section 22010 of the Issued for Construction Specifications and Drawings for Line Erection and Materials for the Project (previously produced at Bates No. PCIRS_02536 – 2666), subsections 3.5A and 3.5D (PCIRS_02559) of which provide that, "Contractor agrees to comply with all safety provisions for the Project, including all requirements and regulations of OSHA and state requirements for health and safety on

construction projects," and "Contractor bears sole responsibility under the law for the safety of its own personnel and for persons entering the work site as agents or visitors of the Contractor." Power further refers Plaintiff to the General Site and Personnel Requirements for the Project, attached as Exhibit A to the Project contract (previously produced at Bates No. PCIRS_02667 – 2671), General Requirement No. 4 (PCIRS_02668) of which provides that, "The Sub-Contractor shall work in compliance with all OSHA, federal, state, local, and POWER safety rules, regulations, and codes." Power further refers Plaintiff to Power's January 3, 2011, Safety Management Program, attached as Exhibit M to the Project contract (previously produced at Bates No. PCIRS_03127 – 3212), the "Objectives" section of which provides, at page 3 (PCIRS_03136), that "All subcontractors are required to be responsible for their own safety program."

Accordingly, Power has not located any documents responsive to this Request for Track.

  4.  All signatures on the "job briefing" by crew members provided to Power.

<u>RESPONSE:</u>

Power objects to this Request to the extent the term "Power" is intended to include Power Testing and Energization, Inc., which entity has been dismissed as a defendant from this case. Power further objects to this Request on the ground that it is not limited in time or to the subject Project, as the latter term is defined in Plaintiff's Requests, nor does it define the "crew members" to which it refers. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Power has limited its search to its documents for the Project pertaining to Track crew members, and responds that it has no job briefings signed by the Track crew members on the Project.

By way of further response, Power states that it previously produced Power Construction Inspection Form Daily Reports for the Project from Power Inspector Ed Clay, which confirm that Track held its daily tailboard meetings (i.e., job briefings) and safety discussions on the Project on the following days:

- August 21, 2013, Report No. 3 (PCIRS_08234 – 8236)—tailboard meeting
- August 22, 2013, Report No. 4 (PCIRS_08237 – 8239)—review of inspection procedures and safety observations with Track crew leader Mike Bates
- August 23, 2013, Report No. 5 (PCIRS_08240 – 8242)—tailboard meeting
- August 24, 2013, Report No. 6 (PCIRS_08243 – 8245)—tailboard meeting
- August 25, 2013, Report No. 7 (PCIRS_08246 – 8248)—tailboard meeting
- August 26, 2013, Report No. 8 (PCIRS_08252 – 8254)—tailboard meeting
- August 28, 2013, Report No. 9 (PCIRS_08261 – 8263)—tailboard meeting

Power states that it does not have any documents responsive to this Request from Track for the subject Project because, although Track was conducting safety tailboard meetings on the subject Project as noted above, in the ten days preceding the accident Track was in the process of creating revised daily tailboard and job hazard analysis forms bearing Track's letterhead (and not H&H's), which it then planned to provide to Power to document the meetings that had occurred.

5. All documents reflecting approval of the guard structures used in the immediate area where Plaintiff was injured.

RESPONSE:

Power responds that it has no documents responsive to this Request.

6. All documents reflecting approval by Sunflower or Mid-Kansas project manager and line supervisor for work performed by Track within ten feet of the energized transmission line that the pole came into contact with resulting in severe injuries to Michael Rowan.

RESPONSE:

Power responds that it has no documents responsive to this Request.

4

7. Attached as Exhibit B is an email from Clarence Suppes dated September 24, 2013 attaching version 8 of a restart letter to Sunflower from Power. Please produce all native files of the previous seven versions of the letter attached as shown in Exhibit B.

<u>**RESPONSE:**</u>

Power objects to this Request on the grounds of attorney-client privilege, and that it is neither relevant nor likely to lead to the discovery of relevant information. There are eleven previous iterations of the letter attached to Plaintiff's Request as Exhibit B. Each of these iterations was attached to a privileged, internal Power communication to or from Power's General Counsel Rand Peebles, each of which was previously listed on Power's privilege log. Each e-mail either requested legal advice regarding the draft letter, provided legal advice, or related to a request for or receipt of legal advice. The drafts of the letter attached to each e-mail contain changes reflecting the privileged information sought or provided. The file name for each letter, and citation to the privilege log (citation includes both the privileged e-mail and attached, privileged draft letter) is as follows:

- 130924 Draft Restart to SF.docx (attached to a September 23, 2013, 5:22 pm e-mail from Larry Sevy to Tim Ostermeier, General Counsel Rand Peebles, Greg Reed; copying Dan Keneipp, Ross Pritchard, and Bill Hansen) (PCIRS_PRIV_00876 – 00879);
- 130924 Draft Restart to SF.docx (attached to a September 24, 2013, 10:02 am e-mail from General Counsel Rand Peebles to Sevy and Reed; copying Ostermeier) (PCIRS_PRIV_00529 – 00533);
- 130924 Draft Restart to SF.DOCX (attached to a September 24, 2013, 10:06 am e-mail from Reed to General Counsel Rand Peebles, Ostermeier, and Sevy) (PCIRS_PRIV_01376 – 01380);
- 130924 Draft Restart to SF (v4) LS RP GR.docx (attached to a September 24, 2013, 11:29 am e-mail from Reed to Sevy and Ostermeier; copying General Counsel Rand Peebles) (PCIRS_PRIV_01337 – 01341);
- 130924 Draft Restart to SF.TO.docx (attached to a September 24, 2013, 12:22 pm e-mail from Ostermeier to General Counsel Rand Peebles; copying Reed and Sevy) (PCIRS_PRIV_00444 – 00448);

5

- 130924 Draft Restart to SF (v5) LS RP GR.docx (attached to a September 24, 2013, 12:27 pm e-mail from Sevy to Reed and Ostermeier; copying General Counsel Rand Peebles) (PCIRS_PRIV_00908 – 00912);
- 130924 Draft Restart to SF (v5) LS RP GR.DOCX (attached to a September 24, 2013, 12:38 pm e-mail from Reed to Ostermeier; copying Sevy and General Counsel Rand Peebles) (PCIRS_PRIV_01343 – 01347);
- 130924 Draft Restart to SF (DK).docx (attached to a September 24, 2013, e-mail from Keneipp to Ostermeier and General Counsel Rand Peebles; copying Pritchard, Hansen, Sevy, and Reed) (PCIRS_PRIV_01403 – 01407);
- 130924 Draft Restart to SF (v5) LS RP GR.DOCX (attached to a September 24, 2013, 2:16 pm e-mail from Sevy to Keneipp, Ostermeier, and General Counsel Rand Peebles; copying Pritchard, Hansen, and Reed) (PCIRS_PRIV_00846 – 00850);
- 130924 Draft Restart to SF (v5) LS RP GR TO.docx (attached to a September 24, 2013, 2:39 pm e-mail from Ostermeier to General Counsel Rand Peebles; copying Sevy and Reed) (PCIRS_PRIV_00430 – 00434); and
- 130924 Draft Restart to SF (v7) LS RP GR DK TO.docx (attached to a September 24, 2013, 3:39 pm e-mail from Reed to Ostermeier; copying Sevy, General Counsel Rand Peebles, Keneipp, Hansen, and Pritchard) (PCIRS_PRIV_01381 – 01386).

Accordingly, no documents are produced in response to this Request.

8.  All training materials and course books used or relied upon by Power during the one year period preceding August 29, 2013, relating to the dangers of electricity.

RESPONSE:

Power objects to this Request to the extent the term "Power" is intended to include Power Testing and Energization, Inc., which entity has been dismissed as a defendant from this case. Power further objects to this Request as vague, overbroad and unduly burdensome. Power attaches as Exhibit A hereto a spreadsheet compiled by Power's Director of Safety, Greg Reed, of all training courses provided to Power employees for the stated time period where either (a) the dangers of electricity, (b) safety procedures for transmission line work, or (c) electricity were addressed. The spreadsheet provides the course name, class name, and the status of available materials for each course. The status

6

column indicates whether Power retains the course documents (indicated by the word "Electronic"), whether the course was provided by a third-party vendor, in which case Power does not have the documents but could potentially request from the vendor, and courses for which materials are not available (indicated by "N/A"). For the N/A category, Power responds that documents are not available because Power no longer has access to documents (e.g., because of an expired licensing agreement) or has not been able to locate the documents.

Power will produce all documents in its possession responsive to this Request (the "Electronic" category). To the extent Plaintiff will identify specific third-party provided courses about which he has an interest, Power will endeavor to obtain the documents for the identified courses that are in the possession of the third-party vendor, as long as the time and cost of doing so is reasonable.

9. All training materials and course books used or relied upon by Power during the one year period preceding August 29, 2013, relating to safety procedures to be followed when working on transmission lines.

RESPONSE:

Power incorporates by reference its objections and responses to Request No. 8.

10. All training materials and course books used or relied upon by Power relating to electricity during the one year period preceding August 29, 2013.

RESPONSE:

Power incorporates by reference its objections and responses to Request No. 8.

11. All signed copies by Power and its representatives of the document attached hereto as Exhibit A.

RESPONSE:

Power objects to this Request to the extent the term "Power" is intended to include Power Testing and Energization, Inc., which entity has been dismissed as a defendant from

7

this case. Power further objects to this Request on the ground that it is not limited in time or to the subject Project, as the latter term is defined in Plaintiff's Requests. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Power has limited its search to its documents for the Project, and responds that it has not located any signed versions of the specific document attached as Exhibit A to Plaintiff's Second Requests for Production (which Exhibit bears the date 11/19/13 in the footer). Power has previously produced at PCIRS_24860 and PCIRS_24864 an October 11, 2013, acknowledgment form containing signatures of six Power employees, including Nathan Weber and James Stovall (but which document bears the date 1/5/12 in the footer). Power states that this acknowledgment form applies to an October 11, 2013, safety orientation conducted by Sunflower for the River Road substation (see PCIRS_24859 – 24860).

By way of further response, Exhibit A to Plaintiff's Request for Production is a Sunflower document. Power states that Sunflower did not provide this acknowledgment form to Power prior to the accident on August 29, 2013, nor did it require Power to collect signatures from its employees or subcontractors acknowledging receipt of Sunflower's Contractor Safety Rules. Power states that it is not aware of any other Sunflower signature forms of the type attached as Exhibit A to Plaintiff's Requests in its possession. Nonetheless, investigation continues. Power will supplement its production in response to this Request should any additional responsive documents be found.

                Respectfully submitted,

                MCDOWELL, RICE, SMITH & BUCHANAN

By:   */s/ Thomas R. Buchanan*
       Thomas R. Buchanan #10572
       Michael J. Gorman #70249
       Rodney K. Miller, *pro hac vice*

*Rowan v. Sunflower Electric Power Corporation, et al.*
Case No. 2:15-cv-09227-JWL-TJJ
U.S. District Court – District of Kansas

Power Training Courses Responsive to
Plaintiff's Second Requests 8-10

| Course Name | Class Name | Status |
|---|---|---|
| 2013 Power Delivery Design Conference | Advances in ACCC/TW Conductor Design | Electronic |
| 2013 Power Delivery Design Conference | Cognitive Conflict | Electronic |
| 2013 Power Delivery Design Conference | East vs. West Planning, Permitting & Construction | Electronic |
| 2013 Power Delivery Design Conference | Electrical Reliability of EHV Underbuild Circuits | Electronic |
| 2013 Power Delivery Design Conference | Guidelines for Determining Conductor Temperatures During Sag Measurements | N/A |
| 2013 Power Delivery Design Conference | Large-Scale Drilled Shaft Foundation Construction Programs | Electronic |
| 2013 Power Delivery Design Conference | NexStation: Your Head Start on Tomorrow's Power Grid | Electronic |
| 2013 Power Delivery Design Conference | The Wallenda Wire: Niagara Falls & The Grand Canyon | Electronic |
| 2013 Power Delivery Design Conference | Today's Steel is Not What it Used to Be | Electronic |
| 2013 Power Delivery Design Conference | Understanding the NESC 5 mA Rule with Help from 3D Finite Element Analysis | Electronic |
| 2013 Power Delivery Design Conference | Advanced PLS-CADD Items of Interest | Electronic |
| Cable Sag Calculator Program | Cable Sag Calculator Program | N/A |
| Electrical Safety Awareness | Electrical Safety Awareness | Vendor - Syntrio |
| Electric Utility System Operations for the Non-Engineer | 2012-11-07/08_Meridian, ID_NWPPA | NWPPA (Northwest Public Power Association) |
| Marketing Tutorial: Power Delivery Communications (Live) | 2012-10-02_Power Delivery Communications Marketing Tutorial | N/A |
| Marketing Tutorial: Power Delivery Overhead Services (Live) | 2012-12-18_Power Delivery Overhead Services | N/A |
| Marketing Tutorial: POWER Substation Services (Live) | 2013-01-23_POWER Substation Services Marketing Tutorial | N/A |
| Marketing Tutorial: Program Management (Live) | 2012-08-29_Program Management Marketing Tutorial | N/A |
| OSHA 10 Hour Construction Safety Training | OSHA 10 Hour Construction Safety Training | Vendor - Advance Online |
| OSHA 10 Hour Construction Safety Training (AO) - V1 | OSHA 10 Hour Construction Safety Training (AO) - V1 | Vendor - Advance Online |
| OSHA 10 Hour Construction Safety Training (CS) | OSHA 10 Hour Construction Safety Training (CS) | Vendor - Click Safety |
| Overview of Transmission Technologies - AC Transmission | Overview of Transmission Technologies - AC Transmission | N/A |
| Safety Orientation Training | Safety Orientation Training | Electronic |