IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL ROWAN,                          )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )          Case No. 15-cv-9227-JWL-TJJ
                                        )
SUNFLOWER ELECTRIC                      )
POWER CORPORATION, et al.,              )
                                        )
                    Defendants.         )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Michael Rowan's Motion to Compel (ECF No.

135).   Pursuant to Fed. R. Civ. P. 37(a) and D. Kan. Rule 37.1, Plaintiff asks the Court to compel

Defendant Power Constructors, Inc. ("PCI") to produce documents responsive to Plaintiff's First

Set of Requests for Production of Documents and Electronically Stored Information.   As set forth

below, the Court denies Plaintiff's motion.

I.      **Relevant Background**

Plaintiff served his First Set of Requests for Production of Documents and Electronically

Stored Information to PCI on November 1, 2015.   On December 15, 2015, PCI served its

responses and objections to Plaintiff and produced 15,000 pages of responsive documents.   In

response to certain requests (including some of those at issue in this motion), PCI stated that its

production was ongoing and that it would supplement its production as it identified any additional

responsive documents that were not protected by the attorney-client privilege or attorney work

product doctrine.   In addition, PCI stated that it would produce a privilege log in connection with

such documents.

On December 24, 2015, PCI served supplemental responses to Plaintiff's First Request for

Production along with 60,000 pages of additional responsive documents.   PCI produced its privilege log on January 27, 2016.

On December 23, 2015, the day before PCI supplemented its response, Plaintiff served on PCI a Golden Rule letter.   Plaintiff states that PCI's supplemental responses were in answer to Plaintiff's Golden Rule letter, but PCI disagrees.   According to PCI, its December 24 production constituted the supplement described in its original response, and was the result of a week's worth of work gathering and reviewing more than 60,000 pages of documents and having a vendor prepare the responsive documents for production.   PCI agrees that it did respond to Plaintiff's Golden Rule letter, but points to its letter dated January 21, 2016 as the response.   The parties agreed to and did hold a meet and confer on February 1, 2016.

On January 27, 2016, PCI delivered its privilege log to Plaintiff.   In the ten days following the parties' February 1 meet and confer, PCI made supplemental production of documents initially withheld on privilege and/or work product grounds, and also produced safety manuals that Plaintiff requested.   PCI served second supplemental written responses to Plaintiff's Requests, and the parties exchanged additional letters and email messages.   On February 22, 2016, the Court held a nearly two-hour telephone discovery conference which included discussion of PCI's privilege log and orders relating thereto.[1]   The Court also set a February 26, 2016 deadline for Plaintiff to file a motion to compel with respect to PCI's discovery responses.[2]   Plaintiff timely filed the instant motion.

The Court finds that, with one exception noted below, the parties have conferred in attempts to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

---

[1] *See* Order (ECF No. 124).

[2] *Id.*

2

## II.     Specific Discovery Requests at Issue

Plaintiff requests in its motion that the Court compel PCI to produce documents and

information responsive to Request Nos. 13 and 15 insofar as they relate to the Sunflower

Defendants,[3] and documents and information responsive to Request Nos. 16 and 17.

### A.     Request Nos. 13 and 15

Plaintiff seeks to compel PCI to produce certain documents which PCI claims are protected

by the attorney-client privilege.   Plaintiff argues that PCI has waived the privilege by sharing the

documents with the Sunflower Defendants, with which PCI does not have a claimed common

interest.   The requests are as follows:

> Request No. 13:   All Documents reflecting an investigation of the
> incident on the Project[4] surrounding injuries sustained by Michael
> Rowan while working near the energized overhead
> transmission/distribution line.
>
> Request No. 15:   Any Documents of Power Constructors/Power
> Testing in any way relating to Track, the Project, and/or
> Mid-Kansas, Sunflower, Sunflower Holdings from January 1, 2013
> to date.[5]

### B.     Request Nos. 16 and 17

Plaintiff also seeks to compel PCI to produce documents responsive to Request Nos. 16

and 17 which PCI has withheld on the basis of attorney-client privilege.   Plaintiff argues that PCI

failed to raise such objection in its original response and has therefore waived the objection.   The

---

[3] Plaintiff originally sought to compel responses to Request Nos. 13 and 15 also with respect to
Track, but the parties have resolved the issue relating to the common interest privilege Power
originally claimed for Track documents.   *See* Plaintiff's Reply (ECF No. 173) at 11.   Likewise,
Plaintiff has informed the Court that the parties have resolved disputes relating to Request Nos. 22,
23, and 33.   *See id.*

[4] Plaintiff defines "the Project" as "the Transmission Line Project located in Barber County at
approximately 2520 yards north of Currie Land and Northstar Road, Medicine Lodge, Kansas,
where Dakota Holt was killed, and Michael Rowan was severely injured."   ECF No. 135-1 at 5.

[5] *Id.* at 8-9.

requests are as follows:

> Request No. 16:   All reports prepared by or on behalf of Power
> Constructors/Power Testing relating to Track during the time period
> January 1, 2013 to date.
>
> Request No. 17:   With regard to the five year time period preceding
> December 31, 2013, all Documents under Power
> Constructor's/Power Testing's possession or control relating to the
> competency and/or inexperience of Track.[6]

In its Requests for Production, Plaintiff defined the term "document(s)" to mean:

> any written, printed, recorded, or reproduced or graphically
> depicted matter in your actual or constructive possession, custody or
> control, whether stored on paper, computer, audiotape, videotape, or
> otherwise, including but not limited to any statement,
> memorandum, correspondence, letter, email, record, instrument,
> report, magazine, newspaper, flyer, diagram, map, picture, film,
> computer disc, invoice, letter, contract, financial statement, outline,
> book or pamphlet, drafts, messages, diaries, files, or notes.[7]

## III.   The Parties' Arguments

The underlying issue is whether PCI has waived its claim of attorney-client privilege with respect to certain responsive documents, either by sharing the documents with others or by failing to raise the privilege as an objection in its original discovery response.   Plaintiff asserts that according to PCI's privilege log, PCI shared certain documents with Sunflower which resulted in PCI waiving any attorney-client privilege that may have protected PCI from producing documents to Plaintiff in response to Request Nos. 13 and 15.   PCI denies that it sent to or received from Sunflower any of the withheld communications.

Plaintiff contends that PCI failed to specifically object to producing documents responsive to Request Nos. 16 and 17 on the basis of attorney-client privilege in its privilege log, and that as a

---

[6] *Id.* at 9.

[7] *Id.* at 4-5.

4

result of its failure the Court should find that PCI waived the privilege.   PCI argues that, although it may not have listed Request Nos. 16 and 17 on its privilege log, the manner in which Plaintiff phrased those requests made them redundant with Request No. 15, which PCI cites in each of its privilege log entries.

## IV.    Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery.   As recently amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[8]

Considerations of both relevance and proportionality now govern the scope of discovery.[9] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[10] Information still "need not be admissible in evidence to be discoverable."[11]   The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase,

---

[8] Fed. R. Civ. P. 26(b)(1).

[9] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[10] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[11] Fed. R. Civ. P. 26(b)(1).

however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[12]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[13]   Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations.   If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[14]   In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[15]   Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[16]   Relevancy determinations are generally made on a case-by-case basis.[17]

But for one brief reference in PCI's response,[18] the parties make no mention of proportionality in their briefing on the motion. Under the amended rule, however, the Court has an

---

[12] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[13] *Id.*

[14] *Id.*

[15] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[16] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[17] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[18] "Accordingly, on the issues presently raised by Plaintiff in his Motion to Compel, Plaintiff was

obligation to limit the frequency or extent of discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in this action; or (iii) the proposed discovery is outside the scope permitted by the rule.[19]

## V.   Privileges

A party responding to a discovery request must expressly assert claims of privilege and work product if the party is withholding otherwise discoverable information on those grounds.[20] In addition, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed."[21]   The court may deem waived any objection not initially asserted in response to a discovery request.[22]   Although waiver may result from a party's failure to timely respond to a Rule 34 request,[23] in this case the claimed waiver arises from an alleged failure to comply with Rule 26(b)(5), which does not automatically result in waiver of the privilege.[24]   "Waiver is a harsh sanction, reserved only in cases of unjustified delay."[25]

---

obligated to narrow the scope of his requests, describe precisely what documents he sought, and assess what responsive documents PCI had and was reasonably capable of producing—applying factors of the Rule 26(b)(1) proportionality analysis along each step of the way."   ECF No. 149 at 9.

[19] Fed. R. Civ. P. 26(b)(2)(C).

[20] Fed. R. Civ. P. 26(b)(5)(A).

[21] *Id.*

[22] *Cardenas v. Dorel Juvenile Group, Inc.*¸ *230 F.R.D. 611, 621 (D. Kan. 2005).*

[23] *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496-97 (D. Kan. 1998).

[24] *Queen's Univ. v. Kinedyne Corp.*, 161 F.R.D. 443, 447 (D. Kan. 1995).

[25] *White v. Graceland Coll. For Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1266

## VI.   Analysis

With the legal standards in mind, the Court considers each of the document requests for which Plaintiff seeks to compel a response.

### A.      Request Nos. 13 and 15

PCI withheld documents that are directly responsive to Request Nos. 13 and 15 on the basis of attorney-client privilege.   Plaintiff contends that information on PCI's privilege log reveals that PCI waived the privilege by disclosing the confidential information to Sunflower.   Plaintiff further contends that, to the extent PCI asserts a "common interest privilege" as grounds for withholding these documents, this Court does not and should not recognize the privilege.   Even if the Court were to recognize the privilege, Plaintiff argues it would not apply here because PCI does not have a common interest with Sunflower.[26]

Plaintiff's challenge to withheld documents responsive to Request Nos. 13 and 15 concerns eight documents listed on PCI's privilege log which, as Plaintiff describes them, "concern debriefing meetings with Sunflower, joint incident reports by PCI and Sunflower, and information sent to Paul Mehlhaff, an executive for Sunflower."[27]   According to Plaintiff, these documents "involve confidential communications that appear to have been disclosed to Sunflower."[28] Plaintiff then argues that disclosing these confidential attorney-client documents to Sunflower

---

(D. Kan. 2008) (no waiver when delay in submitting privilege log not excessive or unreasonable).

[26] Power included in its privilege log nine documents as to which it claimed a common interest privilege.   ECF No. 149-3 at 16, 22, 23, 38, 39, 52.   Each of the nine relate to Track; none relate to Sunflower.   In its response, Power agreed to produce the nine documents, making the argument moot.   ECF No. 149 at 16.

[27] ECF No. 135 at 9.

[28] *Id.*

8

waived any privilege that PCI might assert, and that PCI and Sunflower do not have a common interest that would protect the privilege because a natural conflict arises between those parties as to which is responsible for hiring Track and for Track's conduct.

PCI counters Plaintiff's arguments on the facts, asserting that none of the eight entries at issue contains a communication that was sent to or received from an employee of Sunflower. Specifically with respect to Paul Mehlhaff, PCI explains that the two entries which refer to him contain both emails to Mr. Mehlhaff and a privileged communication about those emails.   PCI asserts that it had already produced the emails, and that following its review of documents withheld for privilege, PCI had also de-designated the accompanying communications and produced the documents before Plaintiff filed the instant motion.   If PCI's assertions are true, they would defeat the argument that PCI waived its attorney-client privilege by sharing privileged documents with Sunflower, and would make inapplicable any discussion of common interest between PCI and Sunflower.

In his reply, Plaintiff does not challenge the veracity of PCI's assertions.   Instead, Plaintiff raises the new argument that PCI has not met its burden of establishing that the documents at issue are privileged.   This court generally does not consider arguments raised for the first time in a reply brief.[29]   Additional reasons exist for the Court to follow the general rule in this instance.   First, the undersigned Magistrate Judge conducted one of several lengthy telephone discovery conferences four days before Plaintiff filed the instant motion, during which she discussed with counsel several issues relating to PCI's privilege log.   During the conference, Plaintiff did not challenge PCI's assertion that any of the documents at issue are protected by privilege. Moreover, the Court has reviewed counsel's communications between January 27, 2016 (the date

---

[29] *Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001).

on which PCI produced its privilege log) and February 22, 2016 (when the Court conducted the telephone conference) and finds that Plaintiff only addressed the issue of waiver; Plaintiff did not challenge any specific privilege log entry or contend that PCI had not met its burden on its claim of privilege.   The Court concludes that, with respect to a challenge to PCI's invocation of privilege, Plaintiff's challenge was not timely and did not comply with the obligation to confer imposed by this Court's Local Rule 37.2.

The Court denies Plaintiff's motion with respect to Request Nos. 13 and 15.

**B.     Request Nos. 16 and 17**

Plaintiff argues that PCI has waived any objection to Request Nos. 16 and 17 on the basis of privilege by failing to raise the objection in it response.   Plaintiff has identified twenty-six documents on PCI's privilege log that he asserts are directly responsive to one or both of those requests, even though the privilege log does not indicate that PCI withheld any documents that are responsive to Request Nos. 16 or 17.   Plaintiff does make a distinction between PCI's responses to each request, pointing out that PCI stated in response to Request No. 16 that it was reviewing tens of thousands of pages of documents for (among other things) privilege, and would supplement its production in response to the request.   Plaintiff argues that reviewing documents for privilege is not the equivalent of objecting based on privilege.   As for Request No. 17, however, PCI made no mention of privilege in its response.

PCI argues that Plaintiff's requests are framed in such a way to make them duplicative and overlapping.   For instance, Request No. 15 asks for "documents" relating to Track, the Project, and/or Mid-Kansas, Sunflower, and Sunflower Holdings from January 1, 2013 to date.   Request No. 15 asks for "reports" relating to Track for the same time period.   In the definitions, however, Plaintiff defines the word "document" to include "report."   PCI further argues that during the

February 22, 2016 conference, the Court did not foreclose PCI from identifying other categories of documents in its amended privilege log, and that the facts do not support the sanction of waiver.

The Court rejects Plaintiff's argument with respect to Request No. 16.   PCI produced documents at the time of its original response on December 15, 2015, noted that it was still reviewing documents, and stated that it would supplement its response.   In its first supplemental responses on December 24, 2015, PCI produced an additional 60,000 documents responsive to Request No. 16.[30]   On January 27, 2016, PCI produced its privilege log, and eight days later served its second supplemental responses and stated that some of the items on its privilege log were also responsive to Request No. 16.[31]

Taken together, these facts demonstrate that PCI comprehensively and timely responded to Request No. 16 and preserved its privilege objections.   It would have made no sense for PCI to assert a privilege objection on December 15, 2015, before it had reviewed documents, but its response put Plaintiff on notice of the formidable task it was undertaking.   Moreover, Plaintiff's definition of the word "document" creates a redundancy with Request Nos. 15 and 16, and the Court will not penalize PCI for failing to include the latter on its privilege log entries relating to Request No. 15.[32]   The Court denies Plaintiff's motion with respect to Request No. 16.

PCI represents that in its consolidated and amended responses on February 26, 2016, it "withdrew its privilege and work product objections to Request No. 17."[33]   That is incorrect.

---

[30] *See* ECF No. 135-4 at 12.

[31] "Because of the duplicative nature of Plaintiff's Request Nos. 14, 15, and 16, specifically that Nos. 14 and 16 are subsets of 15, PCI identified documents withheld on its log as responsive to Request No. 15—the comprehensive category of documents "relating to" Track."   ECF No. 135-5 at 16.

[32] Redundancy is also a factor in the Court's proportionality review.

[33] ECF No. 149 at 24.

PCI never posed a privilege or work product objection to Request No. 17, nor did it state that it was reviewing documents for privilege.   Moreover, the redundancy the Court finds with respect to Request Nos. 15 and 16 does not fully apply to Request No. 17, which seeks documents for the five years preceding December 1, 2013.[34]

However, Plaintiff points to only eleven documents that he believes are responsive to Request No. 17, and all of those documents appear on PCI's privilege log, where PCI has categorized them as being responsive to Request Nos. 13 and 15.   Given the number of documents that it collected and reviewed in order to prepare its privilege log, the Court finds no delay.   Since the time PCI produced its log, it has not supplemented the log to add any documents.   The Court will not impose a sanction of waiver in light of the facts and circumstances.   The Court denies Plaintiff's motion with respect to Request No. 17.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel (ECF No. 135) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 2nd day of June, 2016, at Kansas City, Kansas.

*s/ Teresa J. James*
Teresa J. James
U.S. Magistrate Judge

---

[34] The request would be redundant with respect to documents created in 2013, as Request No. 15 seeks documents relating to Track from January 1, 2013 forward, while Request No. 17 seeks documents relating to the competency and/or inexperience of Track for the five years ending on December 31, 2013.