IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MICHAEL ROWAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-9227-JWL-TJJ |
| | ) | |
| SUNFLOWER ELECTRIC | ) | |
| POWER CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Michael Rowan's Motion to Compel (ECF No. 200). Pursuant to Fed. R. Civ. P. 37(a) and D. Kan. Rule 37.1, Plaintiff asks the Court to compel Defendant Power Constructors, Inc. ("PCI") to produce documents responsive to Plaintiff's Second Set of Requests for Production of Documents and Electronically Stored Information No. 7. As set forth below, the Court grants Plaintiff's motion.

## I.    Relevant Background

Plaintiff served his Second Set of Requests for Production of Documents and Electronically Stored Information on March 7, 2016.[1] PCI served its responses and objections on April 4, 2016.[2] In response to Request No. 7, PCI posed an objection and produced no responsive documents. Plaintiff asserts that counsel discussed this issue during an April 25, 2016 telephone conference but were unable to reach a resolution. PCI does not dispute that the parties engaged in a good faith attempt to resolve this matter, and the Court finds that the parties have conferred in an attempt to resolve the issue in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1)

---

[1] *See* ECF No. 144.

[2] *See* ECF No. 185.

and D. Kan. Rule 37.2.

## II.     Specific Discovery Request at Issue

Plaintiff requests in his motion that the Court compel PCI to produce all native files of the previous versions of a September 24, 2013 letter from PCI to Sunflower Electric Power Corporation[3] in response to Request No. 7 of Plaintiff's Second Set of Requests for Production. PCI objected to the request on the grounds of attorney-client privilege and relevancy.   Plaintiff argues that the subject of the discovery sought is relevant on its face because it is a restart letter between co-Defendants regarding the project on which Plaintiff was injured.   With respect to PCI's privilege objection, Plaintiff contends that PCI has failed to meet its burden of establishing that the earlier versions of a letter that PCI has produced in discovery are entitled to the attorney-client privilege that PCI claims.

Request No. 7 states as follows:

> Attached as Exhibit B is an email from Clarence Suppes dated September 24, 2013 attaching version 8 of a restart letter to Sunflower from Power.   Please produce all native files of the previous seven versions of the letter attached as shown in Exhibit B.[4]

PCI responded with the following objection:

> Power objects to this Request on the grounds of attorney-client privilege, and that it is neither relevant nor likely to lead to the discovery of relevant information.   There are eleven previous iterations of the letter attached to Plaintiff's Request as Exhibit B. Each of these iterations was attached to a privileged, internal Power communication to or from Power's General Counsel Rand Peebles, each of which was previously listed on Power's privilege log. Each e-mail either requested legal advice regarding the draft letter, provided legal advice, or related to a request for or receipt of legal

---

[3]  The September 24 letter, which is attached to Plaintiff's motion as ECF No. 200-2, was produced to Plaintiff in discovery.

[4]  ECF No. 200-1 at 5.

advice.   The drafts of the letter attached to each e-mail contain
changes reflecting the privileged information sought or provided.[5]

PCI then listed the file name for each letter, and the citation to its privilege log for each email with letter attached.

### III.    The Parties' Arguments

Plaintiff argues that the discovery sought is relevant on its face and that the subject matter of the restart letter drafts is business advice.   Accordingly, Plaintiff contends that PCI has not met its burden to demonstrate that the drafts are entitled to the protection of the attorney-client privilege.

PCI asserts that the drafts were "generated out of an exchange" between its general counsel and core PCI personnel, were distributed only among that group, and were attached to emails that included "attorney-client privilege" in the subject line.   PCI then argues that because it took precautions to protect the confidentiality of the drafts, the privilege remains even if PCI ultimately disclosed the final version of the restart letter.

### IV.    Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery.   As recently amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the importance
> of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible in
> evidence to be discoverable.[6]

---

[5] *Id.*

[6] Fed. R. Civ. P. 26(b)(1).

Considerations of both relevance and proportionality now govern the scope of discovery.[7] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[8] Information still "need not be admissible in evidence to be discoverable."[9]   The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[10]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[11]   Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations.   If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[12]   In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[13]   Conversely, when the

---

[7]  *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[8]  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[9]  Fed. R. Civ. P. 26(b)(1).

[10]  *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[11]  *Id.*

[12]  *Id.*

[13]  *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

4

relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[14]   Relevancy determinations are generally made on a case-by-case basis.[15]

The parties make no mention of proportionality in their briefing on the motion. Under the amended rule, however, the Court has an obligation to limit the frequency or extent of discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in this action; or (iii) the proposed discovery is outside the scope permitted by the rule.[16]

## V.   Attorney-Client Privilege

"In federal court, the determination of what is privileged depends on the dictates of Rule 501 of the Federal Rules of Evidence."[17]   Because subject matter jurisdiction in this case is based on diversity and state law supplies the rule of decision, the Court looks to Kansas law to determine whether the attorney-client privilege applies.[18]   Under Kansas law, the essential elements of the attorney-client privilege are:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client

---

[14] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[15] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[16] Fed. R. Civ. P. 26(b)(2)(C).

[17] *Tect Aerospace Wellington, Inc. v. Thyssenkrupp Materials NA*, No. 07-1306-JTM, 2009 WL 1313230, at *2 (D. Kan. May 12, 2009) (citations omitted).

[18] See Fed. R. Evid. 501.

(6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.[19]

The party asserting the privilege and objecting to discovery on that basis bears the burden of establishing that it applies.[20]  "The privilege must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle utilizing all rational means for ascertaining truth."[21]

A party responding to a discovery request must expressly assert a claim of privilege if the party is withholding otherwise discoverable information on that ground.[22]  In addition, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed."[23]

## VI. Analysis

With the legal standards in mind, the Court considers RFP No. 7 for which Plaintiff seeks to compel PCI to produce additional drafts of the restart letter.

---

[19] *ERA Franchise Sys., Inc. v. N. Ins. Co. of New York*, 183 F.R.D. 276, 278 (D. Kan. 1998) (citations omitted); *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 418, 997 P.2d 681, 689 (2000) (citations omitted).

[20] *Boyer v. Bd. of Cty. Comm'rs*, 162 F.R.D. 687, 688 (D. Kan. 1995).

[21] *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, No. 11-2684-JWL, 2014 WL 5581274, at *2 (D. Kan. Oct. 31, 2014) (quoting *In re Grand Jury Proceedings,* 616 F.3d 1172, 1183 (10th Cir. 2010) (internal quotation and citation omitted)).

[22] Fed. R. Civ. P. 26(b)(5)(A).

[23] *Id.*

When Plaintiff served its Second Requests for Production, it attached as Exhibit B a copy of a letter dated September 24, 2013, which Plaintiff described as version 8 of the restart letter.[24] The letter is directed to Clarence Suppes of Sunflower Electric Power Corporation, and shows the sender to be Tim Ostermeier, PCI Senior Vice President.   The letter consists of three pages and contains PCI's "Commercial Recommendations" for actions that would permit restart of its project site activities following the August 29, 2013 incident involving Plaintiff.   The recommendations call for PCI to exercise its contractual right to terminate Track's contract for convenience and without cause, following which PCI would contact the next two lowest bidders from the earlier request for proposals and ultimately negotiate a new contract to complete the work.   The letter discusses the resulting schedule implications, milestone dates, and outage schedule.   In a summary paragraph, the letter seeks Sunflower's concurrence in PCI's recommendations and approval to move forward with PCI's plan to restart work.

The letter is unsigned and bears a large diagonal "DRAFT" stamp on the first page.   It is unclear why Plaintiff refers to it as version 8, but it appears that Plaintiff understands it to be the final version as sent.   Plaintiff asked for the seven earlier iterations; PCI responded that there were eleven versions that preceded Exhibit B.   However, PCI's list of file names for each letter suggests that seven may be an accurate number.[25]

In its response to Plaintiff's document request, PCI describes the drafts as having been *attached to* privileged communications, *i.e.* the emails sent among a limited number of PCI

---

[24] ECF No. 200-2.   Plaintiff did not attach the accompanying email to the instant motion.

[25] In its response, PCI lists the following files names for the drafts, all of which begin with "130924 Draft Restart to SF" following by an extension.   The extensions are (1) .docx, attached to three emails, (2) (v4) LS RP GR.docx, attached to three emails, (3) TO.docx, (4) (v5) LS RP GR.docx, (5) (DK).docx, (6) (v5) LS RP GR TO.docx, and (7) (v7) LS RP GR DK TO.docx. Based on this list, it appears that there were eleven emails transmitting seven drafts.   ECF No. 200-1 at 5-6.

employees.   Rand Peebles, PCI's general counsel, sent one of the emails; six were sent to him; and he was copied on the remaining four.   Larry Sevy sent the first email on September 23, 2013, at 5:22 p.m., to Tim Ostermeier, Peebles, and Greg Reed.   Peebles responded to Sevy and Reed the next morning at 10:02.   The remaining nine emails followed the same day and were sent between 10:06 a.m. and 3:39 p.m.   PCI describes the content of the emails as "either request[ing] legal advice regarding the draft letter, provid[ing] legal advice, or relat[ing] to a request for or receipt of legal advice."   PCI states that the draft letters attached to the emails "contain changes reflecting the privileged information sought or provided."[26]

Before addressing the privilege issue, the Court has no difficulty in finding that the requested discovery is relevant and that in its one footnote addressing the issue, PCI has not met its burden to establish lack of relevancy.   Plaintiff already has received one version of the letter in discovery, and for purposes of relevancy there is no distinction between the produced letter and other versions of the document.   Moreover, the subject of Track's dismissal and PCI's discussion with Sunflower of its plans to resume work on the project is relevant to PCI's and Sunflower's assertions of comparative fault.[27]

Plaintiff likewise asserts that PCI has not satisfied its burden to establish that the attorney-client privilege applies to the requested discovery.   While Plaintiff offers a qualified concession that the September 23 and 24 emails are privileged communications between Peebles and other PCI employees,[28] he contends that attaching various drafts of the restart letter to the

---

[26] *Id.* at 5.

[27] As for proportionality, the Court need not address the issue because it has not determined that the discovery sought runs afoul of Fed. R. Civ. P. 26(b)(2)(C).

[28] "To the extent that the email itself was a communication requesting or giving legal advice, upon a proper showing, Plaintiff would concede that the emails *may* be privileged communications." ECF No. 200 at 3.

emails does not automatically confer privilege on the drafts.   Plaintiff's argument highlights the fact that the existence of the privilege is determined on a case-by-case basis.[29]

The Court finds that PCI has not established that the drafts of the restart letter are entitled to attorney-client privilege protection.   PCI's carefully-worded description of the drafts as documents which "contain changes reflecting the privileged information sought or provided" in the emails to which they were attached does not make a clear showing that the privilege applies.[30] The drafts are not communications between attorney and client that any of the participants intended to remain confidential; instead, the drafts were of a letter that PCI intended to and ultimately did send to Sunflower.   The letter sought Sunflower's concurrence in PCI's commercial recommendations and plan for removing Track from the project and replacing it with another contractor, and Sunflower's approval of a revised timeline for completing the project.

No legal advice or request for legal advice is apparent in the version of the letter that Plaintiff has submitted.   PCI asserts that the prior drafts addressed the question of whether Power should terminate its contract with Track and, if so, on which grounds.   PCI conclusively states that those are fundamentally legal questions, but the Court disagrees.   PCI's decision to terminate its contract with Track may have had legal consequences,[31] but the letter was directed to

[29] *Harlow v. Sprint Next Corp.*, No. 08-2222-KHV-DJW, 2012 WL 646003, at *5 (D. Kan. Feb. 28, 2012) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 396-97 (1981)).

[30] *See Ali v. Douglas Cable Commc'ns, Ltd. P'ship*, 890 F. Supp. 993, 994 (D. Kan. 1995) ("The party seeking to assert a privilege or protection must make a clear showing that it applies.").

[31] PCI recounts the dispute resolution proceedings it engaged in with Track following its termination of the contract, and states that it paid to settle Track's "wrongful termination claims." ECF No. 204 at 3.   To support those assertions, PCI provided the Court with copies of its settlement memorandum with Track and their August 2013 contract.   The Court has reviewed those documents, and notes that the contract provision PCI invoked to terminate their agreement gave PCI the unilateral right, upon ten days' written notice, "for its convenience and without cause," to terminate the agreement.   The provision goes on to describe what work, costs and

Sunflower, the project owner, and not to Track, PCI's subcontractor.   Thus, any input that Peebles

had in the drafts is more accurately described as business or commercial, rather than legal, advice.

> The attorney-client privilege applies in a corporate setting.
> However, because in-house counsel has an increased level of
> participation in the day-to-day operations of the corporation, it is
> more difficult to define the scope of the privilege when a
> communication is made to in-house counsel.   Thus, in such a
> setting, the attorney-client privilege attaches only to
> communications made for the purpose of giving or obtaining legal
> advice or services, not business or technical advice or management
> decisions.[32]

PCI has made no showing that any of the drafts it has withheld contain legal advice or a request

for legal advice.   The Court must carefully consider these drafts separate and apart from the

emails to which they were attached.   "Sending an otherwise non-privileged document to a lawyer

in connection with a request for legal advice will not make the attached document independently

privileged and immune from discovery, even though the communication seeking legal advice is

privileged."[33]   PCI has not met its burden to establish that the requested discovery is protected

from discovery by the attorney-client privilege.

## VII.   Sanctions

Rule 37(a)(5)(A) provides that if a motion to compel is granted, the court must, after giving

an opportunity to be heard, require the responding party to pay the movant's reasonable expenses

---

expenses, and overhead and profit PCI would pay Track following such termination.   Given the
contract language, the Court questions whether Track's demand for payment is properly
characterized as "wrongful termination claims."   The settlement memorandum makes no
mention of wrongful termination, but states that it arose from the October 24, 2013 termination for
convenience of Track's contract.

[32] *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009) (internal citations
omitted).

[33] *Lee v. Chicago Youth Centers*, 304 F.R.D. 242, 249 (N.D. Ill. 2014).

and attorney's fees incurred in making the motion.[34]   Accordingly, no later than **August 3, 2016**, Plaintiff shall file a response setting forth the amount he requests, along with an affidavit itemizing the expenses and attorney's fees he incurred in bringing the instant motion.   PCI shall have until **August 24, 2016** to file a response thereto.   The Court will thereafter enter an order specifying the amount of the award and the time of payment.

**IT IS THEREFORE ORDERED THAT** Plaintiff Michael Rowan's Motion to Compel (ECF No. 200) is **GRANTED.**   Defendant PCI's objections to Plaintiff's Second Set of Requests for Production of Documents and Electronically Stored Information Number 7 are **OVERRULED.**   Within five (5) business days of the date of this order, PCI shall deliver to Plaintiff all versions of the letter attached at Exhibit B to Plaintiff's Second Set of Requests for Production of Documents and Electronically Stored Information.

**IT IS FURTHER ORDERED THAT** no later than **August 3, 2016**, Plaintiff shall file a response setting forth the amount he requests, along with an affidavit itemizing the expenses and attorney's fees he incurred in bringing the instant motion.   PCI shall have until **August 24, 2016** to file a response thereto.

**IT IS SO ORDERED.**

Dated this 13th day of July, 2016, at Kansas City, Kansas.

_s/ Teresa J. James_
Teresa J. James
U.S. Magistrate Judge

---

[34] Fed. R. Civ. P. 37(a)(5)(A).

11