IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Michael Rowan,

    Plaintiff,

                                                                        Case No. 15-9227-JWL

v.

**Sunflower Electric Power Corporation and
Mid-Kansas Electric Company, LLC;**

    Defendants.

## MEMORANDUM & ORDER

On August 29, 2013, plaintiff sustained electrical injuries when he was installing a guard structure under an overhead power transmission line during a utility line construction project near Medicine Lodge, Kansas. At the time of his injury, plaintiff was employed by and performing work for his employer, Track Utilities, LLC ("Track"). Plaintiff asserts negligence claims against the owner of the transmission line, Mid-Kansas Electric Company, LLC, and the operator of the transmission line, Sunflower Electric Power Corporation. While plaintiff initially asserted negligence claims against the contractor responsible for the utility line construction project, Power Constructors, Inc. ("Power"), the court recently granted Power's motion for summary judgment after concluding that plaintiff's claims against Power were barred by the exclusive remedy provision of the Kansas Workers' Compensation Act.

This matter is now before the court on the Utilities' motion to strike plaintiff's expert, Donald R. Johnson. Mr. Johnson is a licensed electrical engineer with more than thirty-five

years of experience in the field of electric power distribution, including the construction and design of electric utility systems and overhead electric transmission line construction. Mr. Johnson is a member of the Institute of Electric and Electronic Engineers (IEEE) and is knowledgeable about National Electronic Safety Code ("NESC") compliance. Plaintiff intends to call Mr. Johnson as a witness at trial primarily to establish the duty of care and to prove the breach of that duty by the Utilities. In resolving the Utilities' motion to exclude, the court assumes familiarity with the court's memorandum and order resolving the parties' motions for summary judgment and the parties' factual showing on summary judgment. As will be explained, the motion is granted in part and denied in part.

**Standard**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert testimony. *See id.* at 589–93; *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147–48 (1999). The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In order to determine that an expert's opinions are admissible, this court must undertake a two-part analysis: first, the court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the court must determine whether the witness's opinions are "reliable" under the principles set forth in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702 advisory committee notes. Under Rule 702, "[t]he proponent of expert testimony bears the burden of showing" that its proposed expert satisfies these requirements, and district courts have considerable latitude in determining whether the proponent has satisfied this burden. *See Heer v. Costco Wholesale Corp.*, 589 Fed. Appx. 854, 861 (10th Cir. 2014) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *Kumho Tire*, 526 U.S. at 152).

*Applicable NESC Standards*

The parties in this case agree that the Utilities were required to conform to the standards set forth in the National Electrical Safety Code (NESC). Relying on a Kansas Administrative Regulation, plaintiff contends that the Utilities were required to follow the 1997 edition of the NESC. *See* K.A.R. § 82-12-2 (2009). The Utilities, in turn, contend that federal regulations require them to follow the most recent edition of the NESC, which is the 2012 edition. *See* 7 C.F.R. § 1724.50. The parties agree that, for purposes of this case, there are no substantive differences between the two editions of the NESC.

Despite the fact that no meaningful distinction exists between the 1997 and 2012 editions of the NESC, Mr. Johnson repeatedly criticizes the Utilities in his report based on the Utilities'

3

failure to "study" the 1997 edition; failure to maintain a copy of the 1997 edition in the offices of management personnel; failure to "look" at the 1997 edition; and failure to consider the 1997 edition to be applicable to the project. Mr. Johnson concludes that the Utilities had a "cavalier" attitude about the 1997 edition and ignored it at all times. The Utilities move to preclude Mr. Johnson from telling the jury that the 1997 edition of the NESC applies to this case and from suggesting to the jury that negligence can be found based solely on the Utilities' failure to adhere to the 1997 edition. The motion is granted.

In light of the parties' agreement that there is no meaningful distinction between the two editions of the NESC, the court need not decide whether one edition applies over the other edition. Because there is no substantive difference, and because Mr. Johnson agrees that it is common practice in the industry for utilities to follow the most recent (2012) edition of the NESC, Mr. Johnson may not tell the jury that the Utilities' failure to adhere to the 1997 edition is pertinent in any respect. He is free to rely on the 1997 edition in connection with explaining to the jury the applicable standard of care or a particular safety requirement, but he may not suggest to the jury that the 1997 edition (as opposed to the 2012 edition) necessarily governs the Utilities or that the Utilities departed from the applicable standard of care based solely on their failure to adhere to the 1997 edition.

*Whether the Utilities Knew that Track was Working Under an Energized Line*

In Opinion B of his report, Mr. Johnson opines that the Utilities knew that Track was building guard structures under an energized line. The Utilities move to exclude this opinion on the grounds that it is based solely on the deposition testimony of Randall Miller, a Track

employee, and is contradicted by other evidence in the record reflecting that the Utilities expected that the guard structures would be built after the scheduled outage. This opinion is excluded but not because it is contradicted by other evidence in the record. Rather, Mr. Johnson's opinion amounts to no more than his personal belief as to the weight of the evidence through which he resolves a factual dispute that the jury is fully qualified to resolve on its own. As such, the opinion does not assist the jury in any respect.

*Failure to Utilize Protective Settings*

In Opinion C of his report, Mr. Johnson opines about the Utilities' failure to place the transmission line's recloser (or circuit breaker) in its "one shot" mode. The evidence suggests that when placed in this mode, the recloser would not automatically reset and would remain open once the fault current reached the recloser's trip threshold. In the open position, electricity would not flow through the lines. In simplest terms, then, the "one shot" mode is a protective setting that causes a transmission line to de-energize upon contact and remain de-energized for purposes of any subsequent contact with the line. In a related vein, Mr. Johnson asserts that the Utilities should have designed the transmission system such that the system protection "relay" settings and/or grounding of the transmission line were compliant with the NESC. Mr. Johnson asserts that compliant relay settings and/or grounding of the line would have ensured that the line was de-energized promptly once the initial contact was made. According to Mr. Johnson, had the Utilities followed these precautions, plaintiff would not have sustained a "second electrical experience" when the electrified pole swung around and hit plaintiff on the head.

5

The Utilities move to exclude the entirety of Mr. Johnson's Opinion C. With respect to Mr. Johnson's testimony about placing the recloser in one-shot mode, the Utilities contend that the opinion is unreliable because Mr. Johnson has ignored plaintiff's and Track's negligence and their failure to follow pertinent safety regulations and has ignored that the Utilities' safety manual requires the use of a one-shot setting only when contractors will approach within 10 feet of an energized line, which was not anticipated in this case. These challenges do not undermine the admissibility of Mr. Johnson's testimony or the basis for his opinion. Rather, they merely go to the weight of Mr. Johnson's testimony and can be explored on cross-examination. The Utilities contend that Mr. Johnson's opinion about the allegedly noncompliant or inadequate relay settings and/or grounding of the transmission line is unreliable because he did not calculate the "minimum clearance requirement under the NESC," he performed no "fault modeling" of the incident and he never tested the ground resistance at the incident site. But that sentence captures the whole of the Utilities' argument—they fail to explain how these asserted failures affect the reliability of Mr. Johnson's opinion. Moreover, Mr. Johnson notes in his report that such testing would have been futile because the site conditions had significantly changed from the time of the incident. This argument, then, is rejected.

The Utilities also move to exclude Mr. Johnson's opinions about the use of protective settings on the grounds that those opinions are irrelevant because plaintiff only had one contact with the energized pole and, contrary to Mr. Johnson's report, did not have a "second electrical experience." This aspect of the Utilities' motion is granted in part and denied in part. It is granted to the extent that Mr. Johnson may not tell the jury that plaintiff received a second electrical shock when he was struck in the head by the pole. He is not qualified in any respect to

offer that opinion, which is based solely on the testimony of Randall Miller, a Track employee, who testified simply that the pole was still energized when it hit plaintiff in the head. As noted earlier, Mr. Johnson may not offer his personal belief as to the weight of any particular evidence as such testimony does not assist the jury. Mr. Johnson, however, may testify as to whether a one-shot setting would have precluded a second electrical experience to the extent the jury concludes that a second electrical experience occurred.[1]

Finally, in the context of his Opinion C, Mr. Johnson states that "the extremely high electric currents, through both Mr. Rowan and Mr. Holt, were likely in the range of nearly 120 amps." The Utilities move to exclude any opinion that Mr. Johnson seeks to offer as to the amount of current that plaintiff allegedly received on the grounds that Mr. Johnson has no valid basis for that opinion. In response, plaintiff asserts that Mr. Johnson clarified in his deposition that the 120 amp figure "was the level at which the circuit breaker protection device would have tripped." Plaintiff further asserts that pinpointing the amount of amperage that plaintiff received is not relevant to any issues in the case and is likely impossible in any event. The court, then, grants this aspect of the Utilities' motion as unopposed by plaintiff.[2]

---

[1] The court does not construe Mr. Johnson's report as offering an opinion that plaintiff's initial contact with the energized pole would have been less if the Utilities had utilized the protective settings described in Opinion C.

[2] In their reply brief, the Utilities offer an additional reason why Mr. Johnson's opinion as to relay settings should be excluded—because there was no protective setting that the Utilities could utilize without substantially disrupting service to customers. The court declines to address this argument. *Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (court does not consider arguments raised for the first time in reply brief).

*Whether the Utilities' Conduct was Reckless*

In Opinion E of his report, Mr. Johnson opines that the conduct of the Utilities was reckless and constituted an extreme departure from the applicable standard of care. At other points in his report, he reiterates his opinion that the Utilities were "reckless" with respect to the NESC and "grossly" violated both the NESC and their own safety manual. Report at 13, 22, 25, 43-45, 47. The Utilities move to exclude this opinion and to preclude Mr. Johnson from using such terms in his testimony at trial. The motion is granted. By opining that the Utilities were reckless and grossly negligent, Mr. Johnson is telling the jury what legal conclusion they should draw from the facts presented to them. *See Garcia v. Estate v. Arribas*, 2005 WL 6011256, at *3 (D. Kan. 2005) (excluding expert testimony that doctor's performance was grossly negligent or reckless). While Rule 704(a) allows expert testimony to embrace an "ultimate issue," there are "limits to this otherwise liberal evidentiary rule." *See id.* (citing *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) (an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts)). Moreover, to the extent Mr. Johnson's opinion is intended to convey the Utilities' state of mind, he is no more qualified than the members of the jury to opine on that issue. *See id.*

Plaintiff asserts that *Holt v. Wesley Medical Center, LLC*, 2004 WL 1636571 (D. Kan. 2004) permits his expert to testify that the Utilities acted recklessly. It does not. The *Daubert* motion in *Holt* only challenged the experts' qualifications to testify as to the standard of nursing care on an obstetrical nursing unit and the experts' opinions on understaffing. *Id.* at *5-6. The court denied those motions. *Id.* at *5-6. The court's reference to the expert's testimony as it related to wanton conduct was made in connection with ruling on the defendants' motion for

summary judgment on punitive damages. *Id.* at *10-11. While the court concluded that the expert's testimony was sufficient to create a factual issue on whether defendants acted in a wanton manner, the issue of whether the expert could offer testimony at trial concerning reckless conduct was not before the court.

For the foregoing reason, Mr. Johnson will not be permitted to tell the jury that the Utilities acted recklessly or that the Utilities' conduct was a "gross" departure from the standard of care.

*Medical and Vocational Opinions*

In his Opinions H and L of his report, Mr. Johnson asserts that plaintiff "will never be able to safely and properly perform the tasks required of an apprentice lineman, journeyman lineman, or foreman;" that plaintiff "most likely would have reached his goals of becoming a journeyman foreman had he not been injured;" and that plaintiff should "cease working as a residential electrician as soon as possible" because he "poses a risk of injury to himself and others." Report at 88, 90. The Utilities assert that Mr. Johnson, an electrical engineer, is not qualified in any respect to offer opinions about plaintiff's medical condition or vocational abilities. Plaintiff, in response, asserts that Mr. Johnson is "keenly familiar" with the electrical industry and his opinions are limited to "safety and what is required to be a qualified lineman under the NESC and a residential electrician under the NEC."

The court rejects plaintiff's argument and his assertion that Mr. Johnson's opinions are strictly limited to safety issues. Mr. Johnson broadly opines that plaintiff is "physically disabled" and has "problems with concentration, focus and memory." Mr. Johnson has no

medical training, he has not conducted a medical examination of plaintiff and he has not reviewed plaintiff's medical records. His opinion is not based on any objective medical findings in the record. Plaintiff, then, has not satisfied his burden of establishing that Mr. Johnson is qualified to offer opinions about plaintiff's physical or mental capabilities and, more importantly, how those capabilities match the particular occupations that, according to Mr. Johnson, plaintiff cannot perform. His opinion regarding plaintiff's career path had plaintiff not been injured is based solely on plaintiff's testimony concerning his career goals and the testimony of witnesses who described plaintiff as a "hard worker who followed instructions" prior to his injury. His opinion, then, is conclusory and speculative. Plaintiff, then, has not met his burden of showing that Mr. Johnson is qualified to testify about plaintiff's projected career path.

*Whether the Truck was Properly Grounded*

In Opinion J of his report, Mr. Johnson asserts that the truck that Track was utilizing on the work site on the day of the incident was properly grounded. His opinion is based on the testimony of Randall Miller, a Track employee, and photos from the work site. The Utilities move to exclude this opinion because it contradicts the testimony of eye witnesses who testified that the truck was not grounded and the results of an OSGA investigation. The Utilities also move to exclude this opinion because Mr. Johnson conducted no analysis or measurements of the potential paths to ground, the resistance or path through the vehicle, or whether current would have been directed at the metal chain suspending the wooden pole. The motion is denied. The court has reviewed the pertinent deposition excerpts relied upon by the parties and it is clear

that Mr. Johnson has an adequate basis to provide his opinion about the grounding of the truck, including whether the steel outriggers and steel cleats on the tracks of the truck provided sufficient grounding regardless of whether the truck was otherwise grounded with a driven rod. The points raised by the Utilities may be explored through cross-examination at trial.

*Allocation of Fault*

In Opinion K of his report, Mr. Johnson asserts that the Utilities and Power "bear 100% of the responsibility for the electric current and electric shock/burns that entered Mr. Rowan's body;" that Power's and the Utilities' termination of Track without cause is "tantamount in the industry to a concession that Track was without fault;" and that "there are no protective (rubber) gloves on the market . . . that would have prevented the electric current from entering Mr. Rowan's body or the electric shock/burns he received." The Utilities move to exclude these opinions. The court will exclude Mr. Johnson's opinion as to the specific percentage of fault that the Utilities should bear in this case. *See Donathan v. Orthopaedic & Sports Medicine Clinic, PLLC*, 2009 WL 3584263, at *1 (E.D. Tenn. Oct. 26, 2009) (expert witnesses are barred from opining as to the percentage of fault of the parties, but may testify as to the responsibilities of each of the various parties).

Mr. Johnson's opinion concerning the significance of the Utilities' decision to terminate Track without cause is excluded because plaintiff has not demonstrated that Mr. Johnson is qualified to render that opinion. Plaintiff asserts that Mr. Johnson is entitled to explain, based on his industry knowledge and experience, the choice that contractors have "between terminating subcontractors for cause and for convenience, particularly that Power had the option

11

to terminate Track for cause, and with Sunflower's consent, chose not to do so." But plaintiff directs the court to no evidence suggesting that Mr. Johnson's significant experience as an electrical engineer includes any experience or knowledge concerning the contractual dynamics between and among utilities, general contractors and subcontractors.

The motion is denied with respect to Mr. Johnson's opinion as to the availability and efficacy of protective rubber gloves. In support of their motion to exclude, the Utilities assert that Mr. Johnson "used the wrong voltage and made no effort to ascertain the actual amperage;" that Mr. Johnson ignores that the NESC and OSHA required plaintiff to wear protective gloves; and that "Class 2 electrical gloves" would have prevented plaintiff's injuries because they would have insulated against the "low level of shock he received." Mr. Johnson's deposition testimony reflects that he has an adequate factual basis to render his opinion that protective gloves would not have prevented plaintiff's injuries. The Utilities' arguments bear only on the weight of the opinion offered by Mr. Johnson and not the admissibility of that opinion. The Utilities, then, are free to inquire about the alleged deficiencies in Mr. Johnson's opinion on cross-examination, but the court will not exclude that opinion.

*Remaining Arguments*

The Utilities argue that Mr. Johnson's testimony should be excluded because he "cherry picked" facts that support his opinions while ignoring facts that are less favorable to plaintiff. The only specific example of "cherry-picking" offered by the Utilities is Mr. Johnson's opinion (Opinion D) that a reasonable and prudent utility would have de-energized the line prior to plaintiff working in close proximity to the line. According to the Utilities, Mr. Johnson ignores

that guard structures can be built safely under energized lines and that Track, and plaintiff, had done so in the past. The Utilities, however, do not suggest that Mr. Johnson willfully ignored some piece of undisputed evidence that directly contradicts his opinion. This argument, then, goes merely to the weight of Mr. Johnson's opinion and is proper fodder for cross-examination but is not a basis to exclude Mr. Johnson's testimony.[3]

The Utilities incorporate by reference—without elaboration—certain arguments set forth in Power's motion to exclude. Specifically, the Utilities incorporate Power's argument concerning "the incompetence of the Track crew and Sunflower's knowledge thereof" and the claim "that the incident was totally preventable." But the portions of Power's motion that the Utilities incorporate are directed solely to opinions (Opinions F and G) that Mr. Johnson made concerning only Power's conduct. Mr. Johnson, for example, opines that Power should not have retained the lowest bidder on the project and that plaintiff would not have been injured but for Power's conduct. The Utilities did not bother to direct the court to any particular pages in Mr. Johnson's 91-page report in which he renders the same or similar opinions with respect to the Utilities. The court has located similar opinions with respect to the Utilities on pages of 48 and 51 of Mr. Johnson's report. But those opinions are included within Mr. Johnson's Opinion E as the basis for his opinion that the Utilities acted recklessly. Because the court has already ruled that Mr. Johnson cannot offer that opinion at trial, there is no reason for Mr. Johnson to explain to the jury the basis for his opinion that the Utilities acted recklessly. To the extent Mr. Johnson

---

[3] In their reply brief, the Utilities assert for the first time that Mr. Johnson's opinion that the Utilities should have de-energized the line is unreliable because it ignores the fact that the Utilities had no authority to unilaterally de-energize the line. The court declines to address this argument. *Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (court does not consider arguments raised for the first time in reply brief).

has offered those opinions for some other reason not identified by the Utilities in their motion, the court cannot resolve that issue in the absence of any substantive briefing from the Utilities.

The Utilities challenge one statement made on page 12 of Mr. Johnson's report in which Mr. Johnson asserts that plaintiff's injuries were caused by the high voltage electric current flowing through the Utilities' transmission line. The Utilities assert that this "causation opinion" must be excluded as unreliable because Mr. Johnson has failed to rule out other "obvious" causes of plaintiff's injuries, including Track's failure to properly ground the truck; Track's failure to cut the wooden pole to a length that would not reach the height of the overhead line when erected; Track's failure to properly rig the pole; and plaintiff's loss of footing while maneuvering the pole. This argument is rejected. Mr. Johnson's statement is not an opinion—he merely recognizes that plaintiff's injuries, quite obviously, resulted from the electric current in the transmission line. The Utilities cannot reasonably dispute that statement. In his statement, Mr. Johnson does not purport to identify any negligent act or omission of any party and he does not opine on any issues relating to proximate cause or comparative fault. The Utilities' argument, then, misses the mark entirely.

Throughout his report, Mr. Johnson refers to the fact that the overhead transmission line was "uninsulated." The Utilities seem to construe these references as an opinion that a reasonable utility would have insulated the line. The court does not construe Mr. Johnson's report to contain that opinion and plaintiff confirms as much in his response. According to plaintiff, the fact that the transmission line was uninsulated simply means that a higher degree of care was required on the part of the Utilities. Plaintiff's response indicates that Mr. Johnson will not opine that the Utilities should have insulated the line. This argument, then, is rejected.

Finally, the Utilities also make a "catch all" argument that Mr. Johnson's opinions are more prejudicial than probative and should be excluded under Rule 403. That argument is summarily rejected.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Utilities' motion to strike plaintiff's expert (doc. 450) is **granted in part and denied in part**.

**IT IS SO ORDERED.**

Dated this 22nd day of June, 2017, at Kansas City, Kansas.

<pre>
                                   s/ John W. Lungstrum
                                   John W. Lungstrum
                                   United States District Judge
</pre>