IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Michael Rowan,**

    **Plaintiff,**

                                                                                          Case No. 15-9227-JWL

**v.**

**Sunflower Electric Power Corporation and
Mid-Kansas Electric Company, LLC;**

    **Defendants.**

## MEMORANDUM & ORDER

On August 29, 2013, plaintiff sustained electrical injuries when he was installing a guard structure under an overhead power transmission line during a utility line construction project near Medicine Lodge, Kansas. At the time of his injury, plaintiff was employed by and performing work for his employer, Track Utilities, LLC ("Track"). Plaintiff asserted negligence claims against the owner of the transmission line, Mid-Kansas Electric Company, LLC ("Mid-Kansas"); the operator of the transmission line, Sunflower Electric Power Corporation ("Sunflower"); and the contractor responsible for the utility line construction project, Power Constructors, Inc. ("Power"). The court granted Power's motion for summary judgment after concluding that plaintiff's claims against Power were barred by the exclusive remedy provision of the Kansas Workers' Compensation Act. Plaintiff's claims against Sunflower and Mid-Kansas proceeded to trial.

On September 26, 2017, the jury returned its verdict.[1] As reflected on the special verdict form utilized in comparative fault cases, the jury attributed 23% of the fault to plaintiff; 15% of the fault to defendant Sunflower; 0% of the fault to defendant Mid-Kansas; 29% of the fault to Power Constructors, Inc; and 33% of the fault to Track Utilities LLC. The jury found that plaintiff had sustained the following damages:

| | |
|---|---|
| Medical expenses to date: | $182,382.59 |
| Future economic loss: | $3,000,000.00 |
| Noneconomic loss to date: | $750,000.00 |
| Future noneconomic loss: | $150,000.00 |
| Loss or impairment of services as spouse: | $0.00 |
| Total Damages: | $4,082,382.59 |

The jury did not award punitive damages. In accordance with the jury's comparative fault findings, judgment was entered in favor of plaintiff against defendant Sunflower as follows:

| | |
|---|---|
| Medical expenses to date: | $27,357.39 |
| Future economic loss: | $450,000.00 |
| Noneconomic loss to date: | $112,500.00 |
| Future noneconomic loss: | $22,500.00 |
| Loss or impairment of services as spouse: | $0.00 |
| Total Damages: | $612,357.39 |

This matter is now before the court on three post-trial motions filed by the parties—defendant Sunflower's motion for judgment notwithstanding the verdict (doc. 616); plaintiff's motion for

---

[1] At the close of the evidence, the court retained portions of two motions under advisement—plaintiff's Rule 50 motion as to Sunflower's statutory employer defense and Sunflower's Rule 50 motion as to punitive damages—and submitted those issues to the jury. The jury rejected Sunflower's statutory employer defense and rejected plaintiff's claim for punitive damages. To the extent those motions remained under advisement, they are now denied as moot.

new trial (doc. 617); and defendant Sunflower's motion for leave to pay judgment into court (doc. 618).  As will be explained, each of the motions is denied in its entirety.[2]

**Sunflower's Rule 50(b) Motion on its Statutory Employer Defense**

Sunflower maintained at trial that even if it was at fault and contributed to the incident, it could not be liable because it was plaintiff's "statutory employer" for purposes of the exclusive remedy provision of the Kansas Workers' Compensation Act.[3]  The exclusive remedy provision provides as follows:

> Where any person (in this section referred to as the principal) undertakes to execute any work which is a part of the principal's trade or business or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any worker employed in the execution of the work any compensation under the workers compensation act which the principal would have been liable to pay if that worker had been immediately employed by the principal.

K.S.A. § 44-503-(a).  Section 44–503(a) extends the application of the act to certain entities which are not the immediate employers of the injured worker, but rather are "statutory employers."  *Robinett v. Haskell Co.*, 12 P.3d 411, 414 (Kan. 2000).  At trial, Sunflower pursued the "statutory employer" defense under the first alternative set forth in § 44-503(a)—that it was plaintiff's statutory employer because the work that gave rise to plaintiff's injury was part of

---

[2] Plaintiff contends that Sunflower has "waived" its motion for judgment notwithstanding the verdict by presenting an "unconditional tender" of the full judgment amount to plaintiff on November 29, 2017.  Plaintiff offers no authority to support his waiver argument and the court rejects it.  While the nature of Sunflower's offer is not clear from the record, that offer was rejected by Mr. Rowan and, under basic contract principles, the offer carries no legal consequence.

[3] Sunflower had asserted this defense in support of its motion for summary judgment.  The court denied the motion in light of material factual issues concerning the defense.

3

Sunflower's "trade or business." In *Hanna v. CRA, Inc.*, 409 P.2d 786 (Kan. 1966), the Kansas Supreme Court set forth the following tests to determine whether the work being performed is a part of the principal's trade or business:

> (1) Is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business?
>
> (2) Is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?

*Id.* at 789. Thus, the first test looks to industry practice and the second test looks at the individual principal's practice. *Price ex rel. Price v. Western Resources, Inc.*, 232 F.3d 779, 787 (10th Cir. 2000) (applying Kansas law). Both tests are intended to prove the same fact—that the work being done was "part of the principal's trade or business." *Id.*

At the close of plaintiff's case, Sunflower moved for judgment as a matter of law on its statutory employer defense. The court denied the motion in light of material factual questions that the jury was required to resolve. At the close of all the evidence, Sunflower renewed its motion on the statutory employer defense. Plaintiff also moved for judgment as a matter of law on the statutory employer defense, asserting that the jury had no legally sufficient evidentiary basis to find for Sunflower on the defense. At that point, Sunflower conceded that it had not presented any evidence to support the "industry practice" alternative under *Hanna* and the court granted plaintiff's Rule 50 motion to that extent. The court retained under advisement the parties' Rule 50 motions concerning the second alternative of Sunflower's statutory employer defense, Sunflower's past practice. On that issue, the court instructed the jury as follows:

> Defendant Sunflower claims that even if it was at fault and contributed to the incident, which it denies, it cannot be liable in any event because it was a "statutory employer" of plaintiff.  Sunflower is a statutory employer of plaintiff if, at the time of the incident, plaintiff's employer, Track, was doing work which was part of Sunflower's trade or business.  Sunflower bears the burden of proving this defense.
>
> In determining whether Track was doing work which was part of Sunflower's trade or business, you should consider whether the work being performed by Track and plaintiff was such as would ordinarily have been done by the employees of Sunflower.  If you conclude that, in fact, the work performed by Track and plaintiff was such as would ordinarily have been done by the employees of Sunflower, Sunflower would be considered a statutory employer of plaintiff and, as such, would be immune from any claim for damages based on the incident.

Instruction No. 22.  Sunflower did not object to this instruction and it clearly comports with Kansas law.  *See Hanna,* 409 P.2d at 789; *Bright v. Cargill, Inc.*, 837 P.2d 348, 400 (Kan. 1992).  On the verdict form, the jury was asked whether Sunflower "has proved by a preponderance of the evidence that it was plaintiff's 'statutory employer' as explained in Instruction 22."  The jury marked "No," reflecting the jury's conclusion that Sunflower had not proved its defense.

Sunflower has now renewed its motion under Federal Rule of Civil Procedure 50(b) and contends that, as a matter of law, Sunflower was plaintiff's statutory employer.[4]  A party is entitled to judgment as a matter of law only if all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law.  *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009). In resolving a Rule 50(b) motion, the court must draw all reasonable inferences in favor of the nonmoving party (here, Mr. Rowan) and will

---

[4] In its motion, Sunflower contends for the first time that it was plaintiff's statutory employer under the "contracting out contracted work" alternative set forth in § 44-503(a).  In response to plaintiff's argument that Sunflower had waived this argument, Sunflower has expressly withdrawn that aspect of its motion.

5

not weigh evidence, judge witness credibility or challenge the factual conclusions of the jury. *Id*.

In support of its motion, Sunflower relies on the trial testimony of two of its witnesses—Tom Harbaugh and Bruce Dooley, both of whom worked for Sunflower. Mr. Harbaugh testified that Sunflower crews have constructed guard structures on "several" occasions. Mr. Dooley testified that Sunflower crews will rebuild transmission lines (including the building of guard structures) on smaller projects but that Sunflower outsources that work on larger projects, which Mr. Dooley defined as any project over 5 miles in length. According to Mr. Dooley, Sunflower crews are capable of performing that work, but Sunflower cannot devote the necessary time involved with large projects in light of other "situations" that Sunflower has to respond to such as emergency work, storm-related incidents, member support and internal maintenance. Sunflower contends that the testimony of Mr. Harbaugh and Mr. Dooley establishes as a matter of law that Sunflower is "capable" of doing the work that plaintiff was doing at the time of the incident and does in fact do that work when time permits but elects to outsource that work when its employees are busy with other projects.

As plaintiff highlights in response to the motion, the evidence at trial demonstrated that, at the time of plaintiff's injury, Track was replacing and reconstructing transmission and distribution lines on a project that spanned over 70 miles in length. Clarence Suppes, one of Sunflower's senior managers, testified by deposition at trial that Sunflower does not have the resources necessary to undertake projects of that size and that Sunflower contracts that work out to other entities. In fact, Sunflower employees testified that while Sunflower crews did most of their own rebuild work prior to 2008, Sunflower began relying on other entities to perform that

6

work beginning in 2008 or 2009 when overhead line rebuild projects saw a marked increase. Drawing all reasonable inferences in favor of Mr. Rowan, the evidence at trial demonstrated that Sunflower typically—if not always—contracts out line rebuild work (including the building of guard structures) on any and all "major" projects like the project at issue in this case. Mr. Dooley confirmed at trial that on "major" projects, guard structures are built by contractors rather than Sunflower employees. Without question, there was ample evidence from which the jury could reasonably conclude that the work performed by Track and plaintiff was not such as would ordinarily have been done by the employees of Sunflower. The jury's verdict indicates that it credited the evidence that Sunflower does line rebuild work only on very small projects and otherwise outsources that work.

The court further rejects Sunflower's argument that this case is "identical" to one in which Judge Murguia granted summary judgment to Sunflower on the statutory employer defense. In that case, *Stottlemyre v. Sunflower Electric Power Corporation*, 107 F. Supp. 3d 1182 (D. Kan. 2015), Sunflower contracted with the plaintiff's employer to perform maintenance at its power plant and the plaintiff was injured when he was removing a basket from a horizontal air pre-heater for the purpose of changing out the basket. *Id.* at 1184. Sunflower moved for summary judgment on the statutory employer defense, arguing that the uncontroverted evidence demonstrated that Sunflower employees ordinarily removed the baskets. *Id.* at 1189. Specifically, the evidence demonstrated that while Sunflower contracted out the replacement of the baskets during scheduled outages in 2003, 2006 and 2012 to minimize the length and effects of an outage, Sunflower employees regularly removed the baskets during non-outages to assess whether the baskets needed replacement, including during

7

the time period immediately preceding the outage when the plaintiff was injured.  *See id*. at 1189-90.

In *Stottlemyre*, then, there was specific evidence of recent occasions when a Sunflower employee had performed the task at issue—removing a basket from a horizontal air pre-heater. Moreover, Sunflower employees removed baskets at all times during non-outages; Sunflower contracted out the replacement of baskets on those few occasions when baskets were replaced during scheduled outages (roughly every 3 to 6 years).  In that case, then, the contracting out of the work was the exception rather than the rule.  In contrast, no evidence was presented to the jury in this case concerning recent occasions (or, in fact, any specific occasion) when a Sunflower employee built a guard structure or when a Sunflower crew performed line rebuild work.  No evidence was presented from which the jury could determine that major projects were the exception rather than the rule or that Sunflower was regularly engaged in small projects during which crews were building guard structures and rebuilding lines.  In fact, the jury could reasonably have inferred from the evidence that Sunflower, since 2008 or 2009, had not had its employees build any guard structures or work on any small line rebuild projects in light of the marked increased in major line rebuild projects, all of which were contracted out to other entities.

In sum, Sunflower has not satisfied the stringent standard applicable to its Rule 50(b) motion.  The motion is denied.

**Plaintiff's Motion for New Trial as to Defendant Mid-Kansas**

8

Plaintiff moves for a new trial only as to defendant Mid-Kansas on the grounds that the jury disregarded the court's Instruction No. 8 and, in doing so, returned an inconsistent verdict.[5] When a party moves for a new trial under Rule 59(a) on the basis that the jury's verdict is internally inconsistent, it is the court's obligation to "reconcile the jury's findings, by exegesis if necessary," while remaining true to the jury's factual findings.  *See Johnson v. Albt Trucking Co.*, 412 F.3d 1138, 1144 (10th Cir. 2005).  A new trial may only be granted if a court cannot reconcile a jury's answers.  "To be irreconcilably inconsistent, the jury's answers must be logically incompatible, thereby indicating that the jury was confused or abused its power."  *Id.* (quotations and citation omitted).  "A jury's verdict may not be overturned merely because the reviewing court finds the jury's resolution of different questions in the case difficult, though not impossible, to square."  *Id.* (citation omitted).  In short, if "there is any plausible theory that supports the verdict, the reviewing court must affirm the judgment."  *Id.*

To begin, the motion is denied because plaintiff is not entitled to the specific relief he requests.  He expressly seeks a new trial only as to Mid-Kansas and asserts that an "injustice" would result if he was required to retry his claims against Sunflower as well.  He urges that his claim against Mid-Kansas is entirely severable from his claim against Sunflower.  While plaintiff directs the court to two cases that recognized that a new trial could be granted as to only

---

[5] Mid-Kansas asserts that plaintiff has waived his right to challenge the verdict by failing to object on the basis of inconsistency before the discharge of the jury.  Because the rule relied on by Mid-Kansas applies only to general verdicts and not to special verdicts like the verdict utilized in this case, the court rejects this argument.  *See Johnson v. Albt Trucking Co.*, 412 F.3d 1138, 1142-43 (10th Cir. 2005) (Kansas law requires the use of a special verdict in personal injury cases involving comparative negligence; verdict that was taken directly from Kansas pattern instructions was a special verdict under both Kansas and federal law such that party's failure to object was not a waiver of its right to seek new trial on the basis of alleged inconsistency).

9

those parties impacted by an inconsistent finding but not all parties to the trial, neither of those cases involved issues of comparative fault. *See Slaughter v. Philadelphia National Bank*, 417 F.2d 21 (3rd Cir. 1969) (replevin action against bank for wrongful retention of borrower's stock); *Colonell v. Goodman*, 78 F. Supp. 845 (E.D. Penn. 1948) (claim concerning an agent's commission on a sale). In this comparative negligence case, plaintiff advanced the same theory of negligence against both defendants and presented the same evidence as to both defendants. Thus, the issues of apportionment of fault and liability are so interrelated between the two defendants that the interests of justice would require a new trial as to both defendants on all issues. *See P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 628 (Mo. Cto. App. 1994) (attributes of comparative fault system give rise to problems where there is a partial reversal and the comparative fault of multiple defendants is at issue; to avoid prejudice to any parties on retrial, interests of justice require a new trial as to all parties); *Sansone v. St. Louis County*, 838 S.W.2d 16, 18 (Mo. Ct. App. 1992) (where comparative fault principles are involved, it is "essential" that all parties be included in the new trial "to preserve fairness and avoid disadvantage to any litigant").

The motion is further denied because plaintiff has not demonstrated that the verdict is inconsistent with the evidence in the case. Plaintiff urges that the jury's finding that Sunflower was negligent is irreconcilably inconsistent with its finding that Mid-Kansas was not negligent in light of the court's instruction No. 8. In that instruction, an instruction explaining that corporations act only through people such as agents and employees, the court instructed the jury "that, at all times pertinent to this case, Sunflower and its employees were acting on behalf of

10

Sunflower and were also acting as agents on behalf of Mid-Kansas."[6]  According to plaintiff, the jury's finding that Sunflower was negligent necessarily requires a finding that Mid-Kansas was negligent in light of Instruction No. 8.

Putting aside for the moment the specific language of Instruction No. 8, it is clear that the jury could reasonably conclude, based on the evidence presented at trial, that Sunflower was negligent but that Mid-Kansas was not negligent.[7]  The uncontroverted evidence at trial demonstrated that defendant Mid-Kansas is a separate legal entity from defendant Sunflower; that Mid-Kansas has no employees; and that Mid-Kansas entered into a Service and Operation Agreement with Sunflower whereby Sunflower agreed to operate and maintain all transmission lines owned by Mid-Kansas, including the line under which plaintiff was working when he was injured.  The Service and Operation Agreement executed by Mid-Kansas and Sunflower required Sunflower to operate and maintain Mid-Kansas's transmission lines; to perform those services with "prudent Utility practices;" to provide all labor required to perform those services; and to maintain the safety of those lines, including appointing an employee as a safety officer responsible for monitoring safety in connection with the transmission lines.

As the court discussed at the limine conference—albeit in the context of an agreement between Sunflower and Power—evidence concerning contractual agreements between and among the parties and non-parties in the case was relevant for certain purposes, including consideration of fault.  As the court explained in Instruction No. 16:

---

[6] None of the parties objected to this instruction.

[7] At the summary judgment stage, plaintiff disavowed any reliance on a theory of vicarious liability and clarified that he was asserting only direct negligence theories on the part of Mid-Kansas and Sunflower.  See Plaintiff's Response to Defendants' Motion for Summary Judgment, Doc. 440, at 148-150.

11

> . . . . Contractual provisions assigning various tasks and responsibilities to other parties do not absolve defendants of their duty to exercise the highest degree of care to protect others from injury. Nonetheless, you may consider these contractual provisions in determining whether defendants have satisfied their duty to exercise the highest degree of care to protect others from injury.
>
> A party who, by contract, agrees to perform a task or undertake an obligation assumes the burden of performing that task or obligation satisfactorily. You may consider a party's compliance or non-compliance with its contractual obligations in determining whether that party is at fault for the incident in which plaintiff was injured.

This instruction reflects the law as stated in the Kansas Supreme Court's decision in *Smith v. Massey-Ferguson, Inc.*, 256 Kan. 90 (1994).[8] Under the principles espoused in *Massey-Ferguson*, Mid-Kansas, as the owner of the transmission lines, clearly owed a non-delegable duty of ultimate responsibility to exercise the highest degree of care to prevent injury to persons working under their lines. *See id.* at 113. But Mid-Kansas was permitted to delegate the tasks associated with carrying out that duty and then the trier of fact may apportion fault between the party holding ultimately responsibility (here, Mid-Kansas) and the party who assumed the burden of performing the tasks (here, Sunflower). *See id.* In this case, the evidence at trial demonstrated that Mid-Kansas attempted to discharge its duty through the execution of a service and operation agreement with Sunflower under which Sunflower agreed to assume responsibility for operating and maintaining the transmission lines in a prudent and safe manner. The jury's verdict demonstrates that they credited this evidence and determined that Mid-Kansas

---

[8] Plaintiff contends that the jury was not allowed to consider the contract between Mid-Kansas and Sunflower in connection with Instruction No. 16 because that instruction was limited to the contract between Sunflower and Power and the contract between Power and Track. While the instruction did not expressly mention the contract between Mid-Kansas and Sunflower, the language of the instruction nonetheless applies to that contract and nothing precluded the jury from considering the principles set forth in the instruction in connection with the contract between Mid-Kansas and Sunflower.

acted reasonably when it delegated those tasks to Sunflower who, according to the jury's verdict, bore some fault for plaintiff's injury based on its performance of those tasks.[9]

In light of this evidence and the fact that plaintiff was advancing only claims of direct negligence against Mid-Kansas and Sunflower, the fact that the court instructed the jury that Sunflower employees were acting as agents of Mid-Kansas did not require the jury to return a verdict finding liability on the part of both entities. Plaintiff's direct negligence theory against Mid-Kansas did not implicate the actions of Sunflower employees acting as agents of Mid-Kansas. Rather, plaintiff's theory necessarily focused solely on the conduct of Mid-Kansas itself. The only evidence presented at trial concerning the acts of Mid-Kansas was the evidence that Mid-Kansas contracted with Sunflower to operate its transmission lines. The jury clearly determined that Mid-Kansas acted reasonably in doing so. Plaintiff's argument that the negligence of a Sunflower employee acting as an agent of Mid-Kansas necessarily requires a finding that Mid-Kansas was negligent is entirely misplaced in the context of his direct negligence claim against Mid-Kansas. Stated another way, plaintiff's theory of direct negligence against Mid-Kansas is entirely inconsistent with his argument at this juncture that Mid-Kansas is liable for the acts of its agents.

Because plaintiff has failed to demonstrate that the jury's verdict was inconsistent, his motion for new trial is denied.

---

[9] The jury's verdict is also consistent with—and permitted by—Instruction No. 12, which instructed the jury to consider separately the liability of each defendant to plaintiff and that the jury's verdict as to one defendant should not control its verdict with respect to the other defendant.

**Sunflower's Motion for Leave to Pay Judgment into Court**

Finally, Sunflower moves for leave to pay the judgment amount into the court pursuant to Federal Rule of Civil Procedure 67 in what Sunflower describes as an effort "to stop the running of interest on the judgment."  Rule 67(a) provides as follows: "If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it."  Fed. R. Civ. P. 67(a).  Whether to permit such a deposit lies within the discretion of the district court.  *Garrick v. Weaver*, 888 F.2d 687, 694 (10th Cir.1989). Acknowledging that a Rule 67 deposit is proper only when there is a dispute concerning the funds, *see Capital Solutions, LLC v. Konica Minolta Business Solutions U.S.A., Inc*., 695 F. Supp. 2d 1149, 1151 (D. Kan. 2010), Sunflower contends that a dispute exists over the amount of the judgment as reflected in the parties' post-trial submissions (*i.e*., Sunflower contends that any judgment against it is improper and plaintiff disputes that fact).   The court sees no legitimate reason for a Rule 67(a) deposit in this case, as such deposits are generally utilized when the title to the asset is in dispute, not when liability is being disputed.  *See Doldo Bros., Inc. v. Coors Brewing Co*., 2008 WL 657252, at *8 (N.D.N.Y. Mar. 7, 2008) ("The goal of Rule 67 is to provide a safe place for an asset and relieve a depositor of the burden of administering an asset.").

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Sunflower's motion for judgment notwithstanding the verdict (doc. 616) is **denied**; plaintiff's motion for new

trial (doc. 617) is **denied**; and defendant Sunflower's motion for leave to pay judgment into court (doc. 618) is **denied**.

**IT IS SO ORDERED.**

Dated this 22nd day of January, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
